## Brewer *et al. versus* Fleming.

1. Fleming being the owner of the equitable title of a tract of land, the legal title being in Bredin & Campbell, sold it to Brewer and others, and authorized Bredin & Campbell to make a deed to his vendees on payment of the balance of the purchase-money due them, at a time fixed.   By a writing of same date, Fleming acknowledged the receipt of $2500 on account of the purchase-money due him, and agreed that his vendees might have sixty days to give up the contract, and Fleming, in such case, four months to pay back the money paid him, with interest.    The vendees bought the legal title, afterwards gave notice to Fleming that they would not take the land, and Fleming tendered the money, with interest, both within the period stipulated. *Held,* that the purchase from Fleming was at an end, and that his vendees were in the place of Bredin & Campbell as the owners of the legal title.

2. The legal title thus owned by Brewer & Co. gave them no right to the possession of the land ; that remained in Fleming, who alone had a right to cut timber on it.

3. After the purchase from Bredin & Campbell, and notice to Fleming and tender by him, Brewer & Co. cut a large quantity of timber on the land.   *Held,* that they were trespassers, and that the timber might be recovered by Fleming in replevin.

4. A mere temporary occupancy, for the purpose of taking off timber, by one having no right of possession, is not such an *actual* possession as defeats the *constructive* possession which the law casts upon the owner ; and as soon as the timber is severed his right of property vests in it, and replevin or trover lies for its recovery.

5. Fleming, within the period fixed for the agreement, offered to one of the vendees a sum of money, which he said was the amount paid him with interest ; the vendee refused to take it or count it, but did not dispute the amount.   *Held,* that this was a sufficient tender.

6. Fleming's vendees, at the time of their purchase of the legal title, paid or secured to the owners of that title the balance of the purchase-money due them.   *Held,* that Fleming was not bound to tender the amount of the purchase-money thus paid or secured, or to procure a release from Bredin & Campbell, before being remitted to his original equitable title.

ERROR to the Court of Common Pleas of *Forest County.*

In the court below this was an action of replevin brought by Fleming, the defendant in error, against Brewer, Williams, Black and Frasier, the plaintiffs in error, to recover 10,000 feet of timber which had been cut by the defendants, on land claimed by the plaintiff to be his.   The timber was replevied, and 4000 feet of it were taken away by the plaintiff.   A claim property

[Brewer v. Fleming.]

bond was given by the defendants, and the remainder was delivered to them.

A verdict for $846 was rendered for the plaintiff, on which judgment was entered, and a writ of error taken by the defendants.

On July 29th 1854, Lane & Mylert held the legal title to a tract of land in Clarion county, and on that day sold it by articles of agreement to one Clover, who paid $500 hand-money. May 12th 1855, Clover, without having paid any more of the purchase-money, assigned his article to Fleming the plaintiff. After this Bredin & Campbell became the owners of Lane & Mylert's legal title. On January 27th 1862, Fleming, by his attorney in fact J. W. Guthrie, sold and conveyed his title to the land to Brewer, Williams and Black, defendants, and by the instrument of conveyance authorized Bredin & Campbell to execute a deed to them "by paying the balance of the purchase-money, which is $3550," &c.

On the same day Fleming, by his same attorney, receipted to Williams, Black & Co. for $2550 on account of the purchase-money of above land, "they to have 60 days from this date to examine said lands, and if at the expiration of that time, they do not pay the balance of the purchase-money to James Campbell and James Bredin, and also a balance to J. M. Fleming, equal to $8 per acre in all, the said J. M. Fleming, by his attorney in fact J. W. Guthrie, agrees to pay back to the said Williams, Black & Co., $2550 with interest within four months from this date, and on failure to do so this agreement to be null and void, and of no effect."

About or shortly before this time Williams, Black & Co. arranged with Bredin & Campbell for the balance of the purchase-money, payable under the articles of agreement between Lane & Mylert and Clover, more than $500 of the balance being thrown off by Bredin & Campbell, and a deed to Brewer & Co., dated and acknowledged by Bredin and wife, February 28th 1862, and acknowledged by Campbell and wife, and recorded March 26th 1862, was executed and delivered. On this last day a notice from Williams, Black & Co. to Fleming, declining to take the land under their contract with him, was served on J. W. Guthrie the agent of Fleming. On the last day of the four months stipulated for in Fleming's agreement, Guthrie tendered to Black, one of the purchasers, the amount that had been paid Fleming, with interest, but Black refused to receive it.

Williams, Black & Co. afterwards entered upon the land, and employed Frazier, the other defendant, to cut timber. Frazier and his hands lived on the land for one winter, and had stabling for his teams on it; about ten thousand feet of timber having been cut, the replevin was issued.

The plaintiff claimed under another title. This land was sold for taxes in 1858, bought by the county, and deed made therefor,

[Brewer *v.* Fleming.]

dated September 10th 1858. It was acknowledged June 14th 1861, by the treasurer, who made it, but whose term of office had expired in January 1860. The commissioners conveyed to one Clark, June 22d 1863; Clark conveyed to F. B. Guthrie August 1863, and in March 1864, a few days before the replevin issued, Guthrie made a bill of sale of the timber to the plaintiff.

The case was tried at a special court before Hon. S. P. Johnson, President of Sixth District.

The defendants' *first bill of exceptions* was the admission of the treasurer's deed to the county for nine hundred and eighty-one acres of land, assessed in the name of Clover.

A witness swore that F. W. Guthrie showed him a deed and letter to J. W. Guthrie. Witness read the deed; enclosed, and mailed it with the letter; the number of acres was stated in it; F. B. Guthrie made a memorandum of its contents, which witness signed. J. W. Guthrie swore he did not receive the deed; that Clover received his mail matter for him and Clover searched in his presence where he kept his letters, and could not find it.

The court admitted parol proof of the contents of the deed, which was the defendants' *second bill of exceptions*.

The defendants offered the deposition of Craig, who said that J. W. Guthrie, at the time of purchase, produced letters from Bredin & Campbell, offering to make deeds in thirty days; that [about the time the thirty days had expired, or a day or two after, I had a conversation with Judge Campbell. He said on his part he did not feel disposed to execute a deed, but if Mr. Bredin would execute a deed he would also. I immediately informed Williams, Black & Co. of this, and they directed me, for the security of the money they had advanced to Guthrie, to go to Butler and induce Mr. Bredin to make the deed. I saw Mr. Bredin and the deeds were made accordingly. J. W. Guthrie told me that he was the real owner of this land; that the money advanced to him on the contract was his own.]

The court rejected the part in brackets, which was defendants' *fourth bill of exceptions*.

The court rejected the offer of defendants' counsel to prove by John Coogan, that just before the sale in this case was made by Guthrie to Williams, Black & Co., Guthrie employed the witness to go with him and Mr. Williams to show the latter the land, and that under the directions of Guthrie he only showed Williams the best spots of timber, and carefully avoided the main body of the land having little or no timber on it; and that Guthrie further privately arranged with the witness that after showing the good timber, he (Guthrie) would pretend to insist on going over the other parts of the land, but that witness was to refuse to go any further, on the ground that it would take too long and they would not get through, and would have to stay out all night, &c., and

[Brewer *v.* Fleming.]

that this arrangement was carried out by Guthrie and witness; which was the defendants' fifth bill of exceptions.

Plaintiff's points :—

1. That the deed from the commissioners of Clarion county to J. R. Clark, dated 22d June 1863, vests a perfect title to the *locus in quo* in him, and his transfer to F. B. Guthrie and the subsequent transfer by him of the timber to Fleming vested in the plaintiff a perfect title to the timber, and the jury should so find.

2. That the equitable title being in Fleming, his title was not divested by the conditional contract of 27th January 1862, between him and Williams, Black & Co., they having elected to rescind the contract, and the fact of their having obtained the legal title would not give them the right of possession. That the right of possession still remained in Fleming at the time the timber was cut by the defendants, and hence the right of property in the timber was in him, and the jury should so find.

Defendants' points :—

1. That under the whole evidence in this case the plaintiff cannot recover in this form of action.

2. Under the circumstances of this case the defendants had a right to take a conveyance of the legal title from Bredin & Campbell, without waiting for the lapse of the sixty days or the four months mentioned in the contract, and whether before or after giving notice to Guthrie that they did not intend to keep the land : and the plaintiff, in order to make a tender that would entitle him to rescind the contract and get back the land, should have tendered not only the money advanced to Guthrie upon the contract, with interest, but also the $3550 of purchase-money which the defendants had paid or secured to be paid to Bredin & Campbell for the legal title ; and not having done this the plaintiff cannot recover.

3. Even should the court be of the opinion that the plaintiff was not bound, in making his tender, to include in it the purchase-money paid or secured to Bredin & Campbell, he was at least bound to have tendered to the defendants a release from Bredin & Campbell of the bonds given them for the unpaid purchase-money, or a sufficient indemnity to protect the defendants against said bonds.

4. Whatever amount of money should have been tendered by the plaintiff to rescind the contract and get back the land, it was necessary that the tender should be kept up by bringing the money into court, and not having done so the plaintiff cannot recover.

5. If the jury believe the tender to have been made in the manner stated by Charles J. Fox, the tender was not sufficient, and the plaintiff cannot recover.

[Brewer *v.* Fleming.]

6. If the jury believe that J. W. Guthrie did not make the tender in good faith, or in any way contrived or designed that the money should not be accepted, the tender would not be good, and the plaintiff cannot recover.

7. If the jury believe that the land sold by Guthrie in the name of Fleming to the defendants in 1862 had been suffered by him to have been sold for taxes in 1858, and he did not inform them of that fact, he could not afterwards buy in the tax title, and hold it adversely to the defendants, his vendees, nor could he buy the right to the timber from one holding the tax title, and use such assignment of the timber as a ground of recovery against the defendants in this case.

8. The sale or assignment by F. B. Guthrie to J. M. Fleming, of the timber in controversy in this suit, puts said Fleming in the same position, so far as this suit is concerned, as if he (Fleming) had himself purchased the tax title from the commissioners of Clarion county ; and equity would not permit him to do so to the prejudice of the defendants, his vendees.

9. If the jury believe the land embraced in the deed of J. R. Clark and wife to F. B. Guthrie is of the value of $5000 or upwards, said deed is of no validity without a revenue stamp or stamps thereon duly cancelled, amounting to at least five dollars.

10. If the jury believe that the defendants actually entered upon the land in controversy, and took possession thereof for the purpose of cutting and manufacturing square timber, claiming the land as theirs by virtue of their purchase from plaintiff and from Bredin & Campbell, the action of replevin cannot be maintained ; and if the plaintiff has any recourse to the defendants, it must be in some other form of action.

The court charged as follows :—

"The subject of dispute is 10,000 feet of square timber. The action is ' Replevin.' The plea is ' Property.' There is no dispute about the place where the timber was cut or the parties who cut and removed it. Who owned the land on which it grew ? is the question presented. Each party claims to have such ownership, or such a right to the possession as will sustain a claim to the timber. The plaintiff claims it by two separate and independent titles. Originally the land belonged to the trustees of the Bingham estate, who conveyed it, with their other lands in Clarion county, to Lane & Mylert. By contract dated July 29th 1854, Lane & Mylert sold it to Isaac Clover, who, by assignment dated the 12th of May 1855, transferred it to the plaintiff. On the 27th of January 1862, the plaintiff, by his agent, J. W. Guthrie, entered into a contract with the defendants (except Frazier, who was merely a jobber), to sell them this land, and one or two other pieces, at $8 per acre, of which they paid down $2550, agreed to pay Campbell & Bredin, the assignees of Lane & Mylert, the

[Brewer *v.* Fleming.]

balance of purchase-money, amounting to $3550, and pay to plaintiff the balance of what the whole would amount to at the price agreed on, in two annual payments. They took an assignment of the Clover & McClosky contracts, took a receipt for the money paid, and then appended to it a stipulation signed by both parties, that the defendants should have sixty days in which to examine the lands, and elect to take or refuse them; and in case they elected not to take them, the plaintiff was to refund to them the $2550 advanced, within four months, and that contract to be void on his failure to do so. The defendants examined the land, and on the 28th day of February 1862, adjusted the balance of the purchase-money with Campbell & Bredin, and took a deed to themselves for it. At least this is the date of the deed and its acknowledgment by one of its grantors residing in Butler; the other, residing in Clarion, not having acknowledged it until the 26th day of March 1862, on which day it was also placed on record in Clarion county. On the same 26th of March 1862, the defendants served a written notice on the plaintiff's agent that they refused to take the land referred to in their contract of January 27th 1862, and demanding the repayment of the $2550 advanced by them, according to its terms and stipulations. Within the four months stipulated in the contract for its repayment, viz., on the 27th day of May 1862, Mr. Guthrie, on behalf of the plaintiff, made a tender of the money to John Black, one of the defendants, at his store in Pittsburgh. This tender, under the circumstances as made, we say to you was sufficient. The defendant Black having refused to take, touch, or count it, and making no objection, either to its quantity or quality, nor disputing Mr. Guthrie when he called it $2660, waived his right to take any exception to it here, or at least brought on himself the burden of proving there was not the requisite amount. Under this state of facts the plaintiff claims to have been reinstated in all his former rights of ownership in the land in question. We cannot see why he is not. The contract of sale was conditional. No actual possession was delivered or taken. Within the time specified the defendants gave notice of their election not to buy and of their rescission of the contract. Thereafter they could hold the articles and assignments of plaintiff, if at all, only as security or pledge for the repayment of the money advanced. Even if good for that purpose, their equities would be extinguished by the tender made. Their purchase of the legal title from Campbell & Bredin, at the same time they were giving notice of their election not to purchase from the plaintiff, subjects them to a suspicion of bad faith towards him in the transaction. They acquired no right under their contract with the plaintiff to do it, only in the event of their election to buy from him, and in doing it, they acquired no rights but such as their grantors, Campbell

[Brewer *v.* Fleming.]

& Bredin, possessed. They thus acquired the right to enforce payment of the balance of purchase-money by legal process, but not the right to enter upon the land and take off the timber.

"Then as to the other title under which plaintiff claims: the evidence shows the land to have been legally assessed in the name of Isaac Clover in 1856 and 1857, as unseated, and sold for taxes to the commissioners of Clarion county in 1858 ; that it remained in their hands five years, and was not redeemed. In June 1863, they sold it to J. R. Clark, and Clark and wife conveyed the same to Frank B. Guthrie, by deed, dated August 5th 1863, and on the 15th day of March 1864, after the timber in question was got out, and hauled to the bank of the Clarion river, F. B. Guthrie transferred all his right to it to J. M. Fleming, the plaintiff. This writ of replevin issued soon after. We have already ruled that the deeds from the treasurer to the commissioners of Clarion county, and from the commissioners to J. R. Clark, were competent to be given in evidence. If we were right in this, then they create and vest in Clark and his vendees a perfect outstanding title, good against both the vendor and vendee of the Bingham Estate title. By bill of sale, or transfer, the plaintiff was vested with all the rights of F. B. Guthrie to the timber in question, and can recover the same, or its value, so far as cut after Guthrie acquired title, in an action of replevin, unless the defendants were in the previous actual possession of the land, not merely for timbering purposes, but for the purpose of cultivation, or with a view to make that possession continuous, not temporary.

"The plaintiff's points are therefore answered in the affirmative.

"The 1st, 4th, 5th, and 10th points of the defendants are answered in the negative.

"In answer to the defendants' 2d point, we say the defendants had no right, under the contract, to take the deed from Campbell & Bredin, and then demand the payment of all the purchase-money, in addition to the amount advanced, before the plaintiff could save the land from forfeiture. It is therefore answered in the negative.

"The same answer is made to defendants' 3d point.

"6th point answered in the affirmative.

"The 7th and 8th points would be true and applicable if the defendants were the plaintiff's vendees, which they have refused to be by express notice.

"9th point negatived because there is no evidence on the subject. The plaintiff's right of recovery, if at all, is only for the timber taken by the defendants under their property-bond to the sheriff, and not included in the raft. As to the mooted question of whether the raft replevied was in Forest or Jefferson counties when replevied, it is not now in issue, and cannot be tried under the pleadings in this case."

[Brewer *v.* Fleming.]

The defendants assigned for error:—

The admission of the evidence mentioned in the defendants' first and second bill of exceptions, and in rejecting the evidence mentioned in defendants' fourth and fifth bill of exceptions.

Affirming the points of the plaintiff, and negativing the defendants' first, second, third and fourth points; in the answer to the defendants' seventh and ninth points, and in refusing to instruct the jury on defendants' tenth point.

*Purviance, Lathy,* and *Reed,* for plaintiffs.—The treasurer's deed, not having been acknowledged until after that officer went out of office, and there having been no proof of its delivery during his term, should not have been admitted in evidence: Donnel *v.* Bellas, 10 Casey 159. The preliminary proof of the loss of the other deed was not sufficient to admit parol proof of its contents. Clover, the agent of Guthrie, should have been called to supply the links in the proof of loss. The part of the testimony of Craig ruled out, should have been admitted as showing that the defendants desired a conveyance from Bredin & Campbell, for the security of the money they had advanced for it. What was proposed to be proved by Coogan would have tended to show fraud on the part of Guthrie; in connection with the contract, tender and other parts of the transaction, and in view of the large latitude allowed in questions of fraud, should have been received.

The court took both the fact of the tender and its *good faith* from the jury, in charging that under the circumstances it was sufficient, notwithstanding they technically affirmed the sixth point.

The court did violence to the terms of the contract in saying that the defendants acquired a right to a conveyance of the legal title " only in the event of their election to buy from" the plaintiff. The words were those of present conveyance of the equitable title, and authority to obtain the legal title at once. The election of defendants not to keep the land, and their notice to plaintiff, would of themselves be a complete rescission; they would still have the right to the legal title to secure them against a failure of plaintiff to refund.

Affirming the plaintiff's first point was determining his right to recover on the tax title alone, and thus took the whole case from the jury, without regard to its other branches; and was flat denial of the defendants' sixth point, which was nominally affirmed.

When by the contract the equitable title of Fleming was transferred to the defendants, the right of possession passed to them, and when they obtained the legal title that right was not lessened. The plaintiff had then only an equity to the extent of the unpaid purchase-money, and a right to reconveyance after notice from

[Brewer *v.* Fleming.]

defendants of their election to rescind, and proper tender by plaintiff. This right could be enforced only by ejectment.

The tender if good should have been kept up by bringing the money into court: Snyder *v.* Wolfley, 8 S. & R. 332; Peebles *v.* Reading, Id. 457. Replevin is a legal, not an equitable remedy. In ejectment the court may direct a conditional verdict to protect the defendant without deposit of money, but replevin cannot be so moulded. The answer of the court to the defendants seventh and eighth points, took the whole questions of disputed facts from the jury, by saying that the defendants had refused to be the plaintiff's vendees by their notice of refusal.

The Act of Congress makes a deed invalid without a sufficient stamp. The question of the actual value of the land should have been submitted to the jury.

In this case title to land has been permitted to be tried in replevin. The title to land may be incidentally brought in question in transitory actions against a mere trespasser; when both parties claim the land, replevin must fail and ejectment be resorted to: Mather *v.* Trinity Church, 8 S. & R. 511; Powell *v.* Smith, 2 Watts 127; Harlan *v.* Harlan, 3 Harris 513; Baker *v.* Howell, 6 S. & R. 476, 481. The plaintiff if he has the right can recover the land in ejectment, and also for the timber taken as mesne profits, and can restrain the cutting by *estrepement.*

If the plaintiff was to recover a judgment in replevin, the title to the land might be found afterwards to be in the defendants, and yet he could not recover back the price of the timber, that being *res adjudicata.*

Wright *v.* Guier decides only that trover will lie for wood cut without *colour of title.* Clement *v.* Wright, 4 Wright 250, is to the same point.

*W. L. Corbett,* for defendant in error.—The Acts of Assembly do not require deeds from treasurers to the county commissioners to be acknowledged, and the presumption is that the deed was delivered at its date. Although the Act of 1815 gives the form of the deed, and its acknowledgment before a justice of the peace, its acknowledgment before a judge is good: McCoy *v.* Michew, 7 W. & S. 389.

A treasurer may acknowledge a deed after his term of office has expired: Kennedy *v.* Daily, 6 Watts 271. In Donnel *v.* Bellas, 10 Barr 341, 1 Jones 341, 10 Casey 157, the deed was acknowledged during the treasurer's term, but no surplus bond was filed, a large portion of the money remained unpaid, and the deed was undelivered for five years.

It is not shown that Clover ever received the lost letter, and to enforce the rule with the strictness asked for, would make the administration of justice almost an impracticable thing.

[Brewer v. Fleming.]

The testimony of Craig, which was rejected, was detailing the conversation of a third person, who could have been examined. Coogan's rejected testimony was irrelevant. As to the instruction in regard to the tender, the court simply said that form of the tender was sufficient; the question of bad faith was submitted to the jury in the answer to defendant's sixth point.

The assignment by Fleming and the receipt are all one transaction; the defendants were to pay the purchase-money only at the expiration of sixty days, and it was not even then due to Bredin & Campbell. In addition to this, if the money was not tendered in four months, the assignment of the contracts for the land is left in full force. This would have taken away Fleming's equities in the land for $2550, if he had not tendered the money. The defendants, in bad faith, procure a conveyance from Bredin & Campbell, before they had a right to do it, pay the first payment before it fell due, gave their notes, &c., for the rest, and then say Fleming must tender the money he had received, and the money they had paid Bredin & Campbell, and procure a release from Campbell & Bredin of their notes, &c. These facts justify the suspicion of bad faith on the part of the defendants.

The defendants have elected not to take the land, and the plaintiff having tendered the money, he was fully restored to his right as it existed before January 27th 1862.

Plaintiff was entitled to recover on both titles, but if one gave a right to recover, a mistake in the court as to the other would not be a cause for reversal.

The assignment and receipt were but one contract: Jones v. Pennel, 1 Phila. 539, 19 Cons. 63; Blein v. Torode, Dist. Ct. Phila., 17 Leg. Int. 332. The contract was executory; all that plaintiff had to show was his readiness to pay back the money: Henry v. Raiman, 1 Casey 361; Williams v. Bentley, 3 Id. 301. The defendants took the title from Bredin & Campbell against their express stipulation, and had no right to ask a release from Bredin & Campbell.

As to the stamp. When the consideration is *bonâ fide*, the amount will govern the amount of the stamp.

It is well settled that in trover, &c., title of wild lands unoccupied can be tried: Mather v. Trinity Church, 3 S. & R. 509; Powell v. Smith, 2 Watts 127: Harlan v. Harlan, 3 Harris 513; are not in conflict with this. The latter two sustain the principle that replevin in such case as this may be sustained; as do Wright v. Guier, 9 Watts 174; Clement v. Wright, 4 Wright 250.

The opinion of the court was delivered, January 8th 1866, by

AGNEW, J.—Notwithstanding the numerous errors assigned, there are but two principal questions in this case; the first involving the relation of Williams, Black & Co. to the land, and the

[Brewer *v.* Fleming.]

second the form of action.   Fleming, the plaintiff below, brought replevin for ten thousand feet of timber cut by George Frazier for Williams, Black & Co., upon a tract of land claimed by both parties.   Fleming claims as equitable owner of the land, through a purchase by Isaac Clover from Lane & Mylert in 1854; Williams, Black & Co. claim the same land, first by purchase from Fleming, and secondly by conveyance of the legal title to them from Bredin & Campbell, purchasers of Lane & Mylert's title.

But $500 having been paid on Clover's purchase from Lane & Mylert, Campbell & Bredin were desirous to obtain payment of the balance, or put an end to the contract, and, therefore, proposed to take $3500 in full of the balance, if a good purchaser for the land could be found within a short time.   J. W. Guthrie acting as agent for Fleming proposed a sale to Williams, Black & Co. at $8 per acre for the whole, which the latter accepted. The writings consisted of two instruments, dated the 27th January 1862.   In one, Guthrie as attorney of Fleming assigned to them all the estate and title of Fleming, and authorized Campbell & Bredin to convey to them on their paying to Campbell & Bredin $3500, in certain instalments.   In the other, which was partly in the form of a receipt, but was subscribed by both parties, he acknowledged the receipt of $2500 upon a sale of the land, and agreed that Williams, Black & Co., who lived in Pittsburgh, should have sixty days to examine the lands, and if at the expiration of that time they did not pay the balance coming to Campbell & Bredin, and the balance to Fleming, calculating the whole land at $8 per acre, then Fleming should refund to them the $2500 without interest within four months from date, and on failure to do so the agreement to become null and void.   On the 10th of March following, Williams, Black & Co. made out a written notice to Guthrie that they would not take the land at the price designated, and that they expected him to refund the money paid according to the agreement.   This was served on Guthrie on the 26th March 1862.   In the mean time, however, Williams, Black & Co. arranged with Campbell & Bredin for the balance of the purchase-money on the Clover contract, and got from them a conveyance of the legal title.   This deed bore date on the 28th February 1862, but was not finally acknowledged until the 26th of March 1862, and was recorded on that day, being the same day on which the notice was served by Williams, Black & Co. that they would not take the land under their purchase from Fleming.   On the last day of the four months given to Fleming to refund the $2500 paid by Williams, Black & Co., Guthrie on his behalf tendered the money to Mr. Black.   There is no evidence showing that in the mean time, or indeed at any time, Williams, Black & Co. recalled their notice, or reinstated themselves upon their contract by tendering to Fleming the balance

[Brewer v. Fleming.]

due him.  They indeed, in the court below, raised the question as to the sufficiency of the tender to them by Guthrie ; but we discover no error in the instruction of the court upon the facts stated in the charge.  Nor was there any evidence in the case which would justify the jury in finding the tender was not made in good faith, though the question was submitted to them by the judge in his answer to their sixth point.

As the case stood after the notice and non-performance on one side, and the tender on the other, the purchase by Williams, Black & Co. of Fleming's equitable title was at an end, and they were left standing in the shoes of Campbell & Bredin, and clothed only with the bare legal title, and their rights under the Clover contract.  It was in the following winter that the timber was cut by Frazier under a contract of some kind with Williams, Black & Co.  Their right to authorize him to cut and take the timber depended, therefore, not on their purchase from Fleming, which was ended by their own act, but upon the right of Campbell & Bredin under the contract of sale by Lane & Mylert to Clover. If Clover had been let into possession, or had the right to enter under his contract and take possession, his vendors Lane & Mylert and their assigns had no right to enter to cut timber.  As holders of the legal title they were trustees of it for Clover the vendee, who, by the equitable conversion created by the sale, was the equitable owner of the estate, and entitled to its fruits: Longwell v. Bentler, 11 Harris 102 ; Siter, James & Co.'s Appeal, 2 Casey 180 ; Morgan v. Scott, Id. 51.  Their right was simply to enforce payment of the purchase-money in the proper legal form ; and if they entered upon the vendee after letting him into a possession or covenanting to do so, they were liable to restore the possession without a tender of the balance of the purchase-money : Basler v. Niesly, 2 S. & R. 352 ; Harris v. Bell, 10 Id. 39 ; D'Arras v. Keyser, 2 Casey 252.

The relation of Williams, Black & Co. to the land must therefore be determined by the contract of sale to Clover.  This it appears was given in evidence by Fleming.  But no copy of this paper is spread upon our paper-book, no point was made upon its terms at the trial, and no exception taken to that portion of the charge of the court in which the jury were told that as purchasers under Campbell & Bredin, Williams, Black & Co. had no right to enter upon the land and take off the timber.  In this state of the record, the presumption is that the terms of Clover's contract justified the court in charging in answer to the plaintiff's second point, that the right of possession remained in Fleming at the time the timber was cut by the defendant.  Exception was taken, it is true, to the answer to this point, but it is grounded, not upon the terms of Clover's article, but upon the effect of Fleming's sale to Williams, Black & Co.  This will be seen both in the terms of

1 P. F. SMITH—8

the point itself, and the argument founded upon the assignment of error to this answer, the eighth, and also upon the sixth assignment of error.

In the argument it is contended that the election of Williams, Black & Co. to refuse the land under their contract was not a complete rescission; because, it is said, the language of Fleming's assignment was a present conveyance, which authorized them to take a title from Campbell & Bredin instanter, and to use it as a security for the $2500 to be refunded by him in case they refused to take the property. But this is a blending of things essentially different. Admitting that they might purchase the legal title of Campbell & Bredin; and, if it were possible, use it to secure the money paid by them on their purchase of Fleming; what right, in law or equity, remained to them in Fleming's equitable estate, after they had expressly refused to take it, or to pay for it at the expiration of the sixty days, and after his tender of a return of the money they had paid him, without any recall of their refusal in the mean time or any attempt at performance? Their contract with him was at an end. It was not a mere rescission of it by subsequent agreement, but it contained within itself the terms of its own dissolution. They had sixty days to repent in, and they did so. When they gave notice of this; failed to pay at the end of the time, and Fleming, accepting their own construction of the contract, tendered a return of the money; clearly all the force of the contract was spent, all rights of purchase under it ceased, and Williams, Black & Co. fell back upon the bare legal title: and even the right to use it to enforce payment of money actually tendered to and refused by them, differs essentially from a right to the equitable estate of Fleming, which alone could carry with it the right to the timber. It is the right to the possession of the land when the timber was cut, this being an action of replevin, which is the point to be established, and not the enforcement of the payment of the purchase-money, or how much should be tendered under the Clover contract. If Fleming's equitable estate was not in them when the timber was cut and removed, but remained in him by their disaffirmance of the sale and his tender of the return of their money, they had no title to the timber; and this is the only question. To what extent Williams, Black & Co. can use the legal title is not a question here; though it may be seriously questioned how far it can be held as a security beyond the sum of $3500 actually paid, or secured to be paid, to Campbell & Bredin. Campbell & Bredin's offer to reduce the sum due to that amount, and to give one and two years for its payment, was not made to them or for their benefit, and they only secured the position they hold by using their contract with Fleming. After disaffirmance and the tender of the money, can they in equity use the legal

title to compel payment of more than the $3500? Of this we give no opinion.

As the case stands in the record, the right of possession under the Clover contract being in Fleming, the contract of sale being ended by the act of the defendants, and the timber being cut afterwards, the entry of Frazier to cut it was a trespass, and the right to the timber vested in Fleming. A mere temporary occupancy, for the purpose of taking off timber, by one having no right of possession, is not such an actual possession as defeats the constructive possession which the law casts upon the owner: Harlan v. Harlan, 3 Harris 507—referring to Wright v. Guyer, 9 Watts 172, and Elliott v. Powell, 10 Watts 454. See also Sorber v. Williams, 10 Watts 140; Hole v. Rittenhouse, 1 Wright 116; Washebaugh v. Entriken, 10 Casey 74. Nor does such an entry and cutting of timber defeat the owner's right to it, but as soon as it is severed from the freehold, his right of property vests in it: Id. See also the late cases of Clement v. Wright, 4 Wright 254, and Altemose v. Hufsmith, 9 Id. 128. In this state of the case replevin for the timber was not improper. The case is not ruled by Mather v. Trinity Church, 3 S. & R. 509; Baker v. Howell, 6 Id. 476; Brown v. Caldwell, 10 Id. 114, and Powell v. Smith, 2 Watts 127.

According to the authority of these cases, neither trover nor replevin lies against one in the actual possession of land claiming title for timber, slate, or other products severed by him from the freehold, nor even when there is a common possession, and the title is in controversy. But it does lie in favour of the owner, in possession actually or constructively against a tortfeasor or one who has no right of possession, who enters only casually or temporarily to cut timber: Wright v. Guyer, 9 Watts 172; Elliott v. Powell, 10 Id. 454; Harlan v. Harlan, 3 Harris 509; Clement v. Wright, 4 Wright 250, and the analogous case of Altemose v. Hufsmith, 9 Id. 121. This view of the relation of Williams, Black & Co. to the land in effect disposes of all the errors assigned, except the third and fourth. Fleming's ownership of the timber, as the equitable owner of the land, renders it unnecessary to call to his aid the assignment of the timber to him by F. B. Guthrie, the owner of the tax title, and therefore all the errors arising upon that branch of the case become immaterial. So also the questions upon the rights of Williams, Black & Co., under the purchase of the legal title, are out of the case, for they belong to a different controversy, to be settled when they undertake to enforce their rights under the Clover contract.

As to the third error assigned to the rejection of a portion of the testimony of James Craig, Esq., it is only necessary to say that it did the defendants no injury. Why Fleming objected to it, it is difficult to say, for it tended to prove more directly that

[Brewer *v.* Fleming.]

the motive of Williams, Black & Co. in procuring the title from Campbell & Bredin, was not performance of the contract with Fleming, but security for the money paid to him. This was a strong corroboration of their intention to disaffirm the contract, as it was only in that event security was needed. The fourth assignment of error is also without foundation, for the fact that Fleming employed Coogan to show Williams, Black & Co. only the better portions of the land when examining it, if it was a fraud, could only result in relief from their purchase ; and this they had of themselves, by their higher right of disaffirmance of the contract by virtue of its own terms. In this action the fraud was irrelevant, therefore, as a ground of relief from a contract already ended by their own act.

Finding nothing on the record to correct, the judgment is affirmed.