| 175 | 393 |
| f218 | ¹289 |

175 393
f39SC²436

# Philip Fitzpatrick *v.* Emma Engard, S. Louisa Hetzel, William H. Woodward and Albert Gordon, Appellants.

*Equity—Equity practice.*

It is improper practice in equity to treat the court's conclusions of law as the equivalent of a decree. A formal decree should be drawn.

*Practice, S. C.* — *Assignments of error—Exceptions in equity proceedings.*

Assignments of error which set forth portions of the opinion of the court below on exceptions to the court's findings of fact and conclusions of law are irregular if they omit to recite the particular exceptions to which the assignments relate.

*Principal and agent—Statute of frauds.*

A signature made by direction of a party in his presence to a contract for the sale of land is a signature by the party and not by the agent. No question of agency under the statute of frauds arises in such a case.

Argued April 7, 1896. Appeal, No. 237, Jan. T., 1896, by defendants, from decree of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 272, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ.     Affirmed.

Bill in equity for the specific performance of a sale of land.

The case was heard on bill, answer, replication and proofs, before ARNOLD, J., whose findings of facts and conclusions of law were as follows :

The defendants, Emma Engard and S. Louisa Hetzel, being the owners of the property Nos. 268 and 270 South Second Street, in the city of Philadelphia, placed it in the hands of George L. Parker, a real estate agent, for the purpose of obtaining a buyer. After the property had been in Mr. Parker's charge for more than a year, he received an offer of purchase from Philip Fitzpatrick, the plaintiff in this suit. This offer he communicated to his clients and arranged for a meeting with Mr. Fitzpatrick. Accordingly, a meeting was held at Mr. Fitzpatrick's office, on September 3, 1894, between Miss Engard and her agent, Parker, and Mr. Fitzpatrick, when an agreement of purchase and sale was entered into between Miss Engard and Mr. Fitzpatrick for the sale of the property for $3,250, subject to a mortgage of $3,500, or in round numbers $6,750 for a clear title. After Miss Engard and Mr. Fitzpatrick had agreed on the terms, Mr. Fitzpatrick counted out $100, which was paid to Miss Engard, and a receipt therefor was written by Parker at the direction of Miss Engard. This receipt is in these words :

"Rec'd. Phila. Sept. 3/94, of Philip Fitzpatrick, One hundred Dollars on account purchase money Premises 268 and 270 So. 2d St.   Price to be Thirty-two hundred and fifty subject to a mortgage of Thirty-five hundred Dollars.   Settlement on or before October 1, 1894.   Taxes, Water Rent, etc. to be apportioned day of settlement.   Fire Insurance to be paid for by Purchaser. Title to be good and marketable or no sale and money paid on account to be refunded.

"$100.00.                         GEORGE L. PARKER

"Attorney for Emma B. Engard and Louisa Hetzel."

[Two days afterwards Miss Engard received an offer from a man named George Washington for the purchase of the same property for $7,500, which offer she accepted, and authorized her agent to enter into a written agreement for the sale of the property for that sum.   Washington paid $100 on account.   He was allowed thirty days to make settlement, but an additional week was allowed him, when, failing to comply with his agree-

ment, the bargain with him was declared off.] [1]    [After the
sale to Washington, Miss Engard went to see Mr. Fitzpatrick and
told him that she could get a better price for the property, and
had agreed to sell it, and asked him to relieve her of her bargain
with him.] [1]    Fitzpatrick said he was willing to do this if
she would pay back the $100 hand money which he had paid,
and also give him $200 additional, which Miss Engard agreed
to do, but she never did pay back the $100 or the $200 addi-
tional.

When Washington bought, it is testified by Mr. Woodward
that Washington wanted to borrow the $100 from him, but that
he refused to lend it.    He did, however, furnish Washington
with a blank form of agreement for the purchase, and advised
him in regard to the terms thereof.    Mr. Woodward also furnished
to Washington a straw man, as such persons are familiarly called,
in the person of one Albert E. Gordon, who was employed by
Woodward as janitor in a building owned by him and was se-
lected to take the title to the property for $7,500, and execute
a mortgage for $8,500 upon the property.    Accordingly a deed
was made by Miss Engard and Mrs. Hetzel to Albert E. Gor-
don, the straw man, on October 9, 1894, but a settlement was
never made by Washington.    The title papers had been given
to Washington, who took them to Woodward to have the con-
veyances made, and, [after the failure of Washington to carry
out his agreement to purchase, Miss Engard declared the bar-
gain off, and Parker by the direction of Miss Engard, delivered
the deeds to Mr. Fitzpatrick, for the purpose of carrying out the
agreement of sale to him.] [2]

About this time Mr. Woodward, who had theretofore been the
ostensible counsel of Mr. Washington, became a principal actor
in the transaction, and made an offer to Miss Engard for the
purchase of the property at $7,550, which offer was accepted,
and an agreement, dated October 23, 1894, was entered into
between Miss Engard and Mr. Woodward for the purchase of
the property at that sum, of which $50.00 was paid in cash, and
Mr. Woodward was allowed the benefit of the $100 paid by
Washington.    This allowance was made in pursuance of an
assignment by Washington to Woodward of his agreement of
purchase on October 22, 1894.    The bargain between Miss
Engard and Mrs. Hetzel and Mr. Woodward was then carried

out, and the deed from Miss Engard and Mrs. Hetzel to Gordon was accepted by Woodward as a compliance with the contract. There was some delay in negotiating a mortgage of $8,500 placed upon the property, and the final settlement between Miss Engard and Mrs. Hetzel and Mr. Woodward was delayed until the first week in January of 1895. In the meantime, to wit, on December 7, 1894, the bill in this case was filed. In it the plaintiff asked that Miss Engard, Mrs. Hetzel and Gordon be directed to convey the property to the plaintiff, Mr. Fitzpatrick, in pursuance of the terms of the agreement between Miss Engard, Mrs. Hetzel and Mr. Fitzpatrick, of September 3, 1894.

[The case was heard at length and all the facts were fully developed. It raises this principal question—whether the agreement between Miss Engard and Mr. Fitzpatrick can be specifically enforced in view of the fact that it was not signed by her, although it was signed in her presence and by her direction? Other questions arose as to the sufficiency of the description, the consideration, and of the tenders made by Mr. Fitzpatrick before suit brought. Upon the principal question I have no doubt that the agreement was a valid, legal and binding obligation on the part of Miss Engard.] [3]

The act of March 21, 1772, sec. 1, commonly known as the statute of frauds and perjuries, provides that "no estate or interest in any lands shall be assigned, granted or surrendered unless it be by deed or note in writing signed by the party so assigning, granting or surrendering the same, or their agents thereunto, lawfully authorized by writing."

It is undoubtedly true that if Mr. Parker had signed this contract it would not be binding upon his principal if she were not present directing the same. But it is also true and it is established by many authorities, that where a party is present and authorizes the signing of his name to a paper, it is his act as much as if it had been written by his own hand. The textbooks are unanimous on this subject.

In Story on Agency, sec. 57, it is said: "If the principal is present and verbally or impliedly authorizes his agent to affix his name to a deed it becomes the deed of the principal and is as much binding on him as if he had personally sealed and executed it. The distinction may seem nice and refined; but

it proceeds upon the ground that when the principal is present the act of signing and sealing is to be deemed his personal act, as much as if he held the pen and another person guided his hand and pressed it on the seal."

" What is done in the presence and by the expressed or implied direction of the principal, is in law his act, and an agent may therefore be authorized by parol to bind his principal, even upon sealed instruments, if the instrument be executed in presence of the principal and by his direction or tacit consent." Mechem on Agency, sec. 96, citing a bead-roll of American and English cases.

. Judge REED, in his valuable book on the statute of frauds, in sections 1063 and 1073, curtly and forcibly expresses the rule to be that " When a party is present and he directs another to sign a deed for him no written authority is necessary." Other text writers state the law the same way: Brown on Statute of Frauds, sec. 12, *b* ; 1 Washburn on Real Property, p. 299 ; 2 Greenleaf on Evidence, sec. 295.

Many of the cases cited by Mechem are cases of deeds signed by one partner for the firm, and may be supported upon the principle of law that real estate belonging to a firm is generally treated as personal property, although in conveying it the forms required for conveying real estate should be observed. There are, however, a number of cases not between partners where the signature of the grantor has been written in his presence by another and the signature has been held to be valid and binding.

It is said in Gardner v. Gardner, 59 Mass. 483, that " When the grantor's name is written in her presence and at her request it is her act. The disposing capacity and the act of the mind are hers, and she merely uses the hand of another to do the physical act of signing."

Many other cases may be cited. Without quoting from them, I will content myself by referring to them by name. They are : The Mutual Benefit Life Insurance Company v. Brown, 30 N. J. Equity, 193 ; Bird v. Decker, 64 Maine, 550 ; Lovejoy v. Richardson, 68 Maine, 386 ; Jansen v. McCahill, 22 Cal. 563 ; McMurtry v. Brown, 6 Neb. 368.

In Pierce v. Hakes, 23 Pa. 231, there was evidence that the grantor's signature was made by another person at her request, but she afterwards acknowledged and delivered it. The Su-

preme Court decided that such a deed could not be said to be executed by an agent, and held it binding upon the grantor.

Objection was made by the defendants that the description of the property in the receipt by Miss Engard to Mr. Fitzpatrick is not sufficiently definite to justify the court in making a decree of specific performance. It calls for premises 268 and 270 South Second street. In Flanigen v. Philadelphia, 51 Pa. 491, which was an action of ejectment for premises No. 136 South Third street, the Supreme Court decided that " In a city having a known system of notation regulated by municipal laws and acted upon by every one, the description of premises in ejectment by a street number is sufficiently definite."

Indeed it has been decided that parol evidence may be given to make the description certain: Smith and Fleek's Appeal, 69 Pa. 474. Other cases on this subject are Ross v. Baker, 72 Pa. 186, and Phillips v. Swank, 120 Pa. 76, a case in which parol evidence was required to help out the orthography as well as the geography of the agreement. See also McClure v. Jones, 121 Pa. 550.

It is also said that the consideration in the agreement is not certain; that it is not mentioned whether the mortgage is an existing mortgage or to be a new mortgage for a term of years. This is a matter of very little importance, but if it were, this can also be helped by parol. It has been decided that where no consideration is mentioned it may be shown by parol: Bowser v. Cravener, 56 Pa. 132. This is upon the ground, no doubt, that as a consideration other than that mentioned in a deed may be proved, so it can be in articles of agreement for the sale of land, because it does not contradict the deed but explains it.

The defendants also object to the tenders made on behalf of the plaintiff for the consideration money and the deed to be executed to him for the premises in dispute. It was testified that two tenders were made, one of the whole amount of consideration for the entire property, and another of one half the consideration and a deed for Miss Engard's half of the property. When these tenders were made Miss Engard refused to receive the money and execute the deed for the reason that she had already sold the property.

Objection is now attempted to be made that the tender was not in legal tender notes or the amount accurately fixed. It is

exceedingly doubtful whether a tender was necessary in this case after it was discovered that Miss Engard had put the property out of her control.  But it is well settled law that where a tender is necessary and an objection is made to it, the party refusing to receive the tender will not be permitted to make any other objection than that made at the time, for the reason that the objection might have been avoided.  An offer to pay money by a person who has the money with him, which is refused, is a good tender without showing the money: Appleton v. Donaldson, 3 Pa. 381.  A tender partly in coin and partly in bank notes, when the opposite party refuses to accept any money, is a good tender: Brown v. Dysinger, 1 Rawle, 408.  A general refusal is a waiver of what may be considered the details of a tender: Tiernan v. Roland, 15 Pa. 429.

[I am of opinion, therefore, that the agreement between Miss Engard and Mr. Fitzpatrick was a legal and binding obligation on her part, and that the plaintiff performed every act necessary on his part to entitle him to a conveyance of the property.] [4]

But specific performance is not always a matter of right.  It has been said to be a matter of grace, and the court will refuse it in cases in which it would be difficult to work out equity, but will award damages for the breach of the contract rather than specific performance of it.

The defendants set up in their answer that a bill in equity similar to this was filed in court of common pleas, No. 1, of this county, which, on demurrer, was dismissed, and they urge that as a bar to the plaintiff's rights in this case.  It is a well settled rule in equity that a decree dismissing a former bill for the same matter can only be pleaded in bar to a new bill, where the matter has been decided upon the merits of the case.  See 1 Daniel's Chancery, 4th Am. ed. p. 659, and notes.

A dismissal of a bill in equity for matter of law without a hearing upon the merits is like a judgment of nonsuit at law, or a judgment of reversal by the Supreme Court.  It is not a bar to a second bill or action.

I have no doubt in this case that Mr. Washington was merely the agent of Woodward, and that Woodward, as well as the assignee of the mortgage, is affected with actual as well as legal notice of the claim of the plaintiff.  I do not refuse the decree

for specific performance for that reason, but because the agreement of sale by Miss Engard to Fitzpatrick does not bind Mrs. Hetzel, and, therefore, a decree for a conveyance of the whole property could not be made.  When Washington bought he went to Woodward to get the hand money; Woodward revised the agreement for sale and furnished the straw man to take the title; and when by reason of the delay in obtaining money on a mortgage of the property to pay for it, the agreement with Washington was declared off, and Woodward appeared as purchaser in his own name, he took title under the deed made in pursuance of the contract with Washington and got the benefit of the hand money paid by him.  He is not an innocent purchaser without notice.  After Miss Engard made the sale to Washington, she went, as before stated, to see Fitzpatrick for the purpose of obtaining a release from the bargain made with him, and agreed to pay back the $100 he had paid on account and $200 for the loss of his bargain.  She did not pay these sums, but she authorized Parker to return the $100.  This sum Fitzpatrick refused to receive unless it was accompanied with the $200 agreed to be paid to him. ˙ [Parker retained the money for a time, and then, on a written demand by Woodward, who said he was acting on behalf of Miss Engard and Mrs. Hetzel, Parker paid the money to Woodward, who has it until this day.  He says he holds it as a set-off for damages, which, he says, he has sustained by reason of this suit.  As it belongs to Mr. Fitzpatrick, a decree will be entered against Mr. Woodward for the return of the $100.] [5]  [A decree will also be entered against Miss Engard for the damages caused by the breach of her agreement, which I fix at one half of the difference between the price at which she sold the property to Fitzpatrick, $6,750, and the price she obtained from Woodward, $7,550.  This difference is $800.  A decree will be entered against Miss Engard for the payment to Mr. Fitzpatrick of one half of that sum, or $400.] [6] As this matter is so fresh, no charge will be made in the way of interest or damages for delay.  [The costs, including stenographer's fees, will be charged against Miss Engard and Mr. Woodward in equal parts.] [7]

As to Mrs. Hetzel, inasmuch as she did not sign the agreement, or give an authority in writing to sign it for her, no decree can be made against her, and the bill will be dismissed as to her.

The court filed the following opinion on exceptions:

The exception to the finding that the defendants, Engard and Hetzel, placed their property in the hands of George L. Parker, as agent for the purpose of obtaining a buyer, is answered not only by the evidence, but by the admission in the printed argument of the defendants, that Parker had a sign on the house and was offering it for sale in common with other agents. It was not found that he had the property exclusively of all other agents. This, however, is an unimportant matter.

That Parker signed the receipt by Miss Engard's direction and in her presence is proved by his testimony. Parker, who had no interest in the transaction, testified that he wrote the receipt at Miss Engard's direction and read it to her at the time the contract was made with Fitzpatrick and the money paid by him to Miss Engard.

The evidence clearly shows that two days after the sale to Fitzpatrick, Miss Engard sold the property to Washington and directed her agent, Parker, to execute an agreement of sale to him. Washington was allowed thirty days to settle, and, not complying within that time another week was given him, when still defaulting with his contract, the bargain with him was declared off. Parker, the agent, testified, "We declared the bargain off," and then he gave the deeds to Fitzpatrick to carry out the sale to him. Miss Engard did not object then, although she may have done so afterwards, but this is only another proof of her vacillating mind.

[Miss Engard went to Fitzpatrick after the sale to Washington to get a release from the contract with him. He agreed to release her on the return of the $100 he had paid to her and $200 for the loss of his bargain, which Miss Engard agreed to pay, but never did pay. Had she paid it this suit would not have been commenced. After Washington had failed to comply with his contract, Miss Engard made a third agreement of sale, this time to Woodward, and she again went to Fitzpatrick to get a release, which he agreed to give for $300 if paid at once. As she did not pay at once or at any time, she never was released.] [8]

[We have no doubt that Washington was merely the agent of Woodward. Washington had no money to pay the $100 on account of the bargain with him. Where he got it was not

shown, but when he failed to comply with his contract, he assigned it and the $100 paid on account to Woodward, who had the benefit of it in his settlement with the sellers. Why Washington assigned the $100 paid on his contract to Woodward, does not appear, and it is fair to presume that he did it because Woodward furnished the money.] [9]

[The finding against Woodward as a party, is fully supported by the evidence. He was one of the original parties to the bill. He dealt with the sellers as a party when they broke their contract with Fitzpatrick. The deed was made to Gordon as his secret trustee. Woodward used his position as an attorney to compel Parker to pay Fitzpatrick's money, $100, to him under threat of an arrest. Woodward kept the money and has it yet. He first claimed it as a set-off to the damages which he asserts were caused by making him a party to the bill, and afterwards he shifted his position by claiming it in payment for fees due to him by Miss Engard and Mrs. Hetzel; that is, he keeps one person's money to pay another's debt. The statement of this fact shows his liability as a party.] [10]

The argument that the receipt does not state the place where the property is located is not good in law. This is one of the matters which may be proved by parol. In Ross v. Baker, 72 Pa. 186, this same objection was made to a series of receipts which did not state the township and county in which the land was located, and the objection was sustained by the common pleas, but the Supreme Court reversed the judgment on this point. No place was stated in the agreement sued upon in Cadwalader v. App, 81 Pa. 194, or the receipt in Phillips v. Swank, 120 Pa. 76. The place of the date of the receipt will be presumed to be the place where the property is located, in the absence of proof. Here the proof shows that the property is in the city of Philadelphia.

The finding that a signing by an agent in the presence and by the direction of the principal is in effect a signing by the principal, is amply sustained by the cases and the text-books based thereon. Our own case, Pierce v. Hakes, 23 Pa. 231, supports this finding. The cases from New Jersey and Nebraska, Mutual Benefit Life Ins. Co. v. Brown, 30 N. J. Eq. 193; McMurtry v. Brown, 6 Neb. 368, are cases under statutes, like our own, which require the authority of the agent to be in

writing. But this point is unimportant. The decisions are that a signature made by direction of a party in his presence, to a contract for the sale of land, is a signature by the party and not by the agent. No question of agency under the statute of frauds arises in such a case.

Plaintiff was given leave to amend his prayers so as to obtain damages in case specific performance was refused. This is the same as was done in Thomas v. Ellmaker, 1 Parsons, 98. But without such amendment the decree was right, according to Maguire v. Heraty, 163 Pa. 381, a case like the present in its prayers and decree. Alternative or substituted relief may be given where the relief prayed for is refused, provided it is of a kindred nature and is' based upon the case as made by the bill; Clark v. Martin, 49 Pa. 299.

Exceptions dismissed and adjudication confirmed.

*Errors assigned* were (1–10) portions of the opinion of the court below, above quoted.

*A. E. Stockwell, W. H. Woodward* with him, for appellants. —Under the Pennsylvania statute of frauds, the agent's authority must be given in writing, or must be ratified in writing; and a contract signed by the agent, although in the presence and at the request of the principal, will not take the contract out of the statute: Pepper & Lewis Dig. 2190, pl. 1; McDowell v. Simpson, 3 Watts, 129; Dumn v. Rothermel, 112 Pa. 272; McClintock v. Oil Co., 146 Pa. 144; Kozel v. Dearlove, 144 Ill. 23.

Moreover, this contract is so incomplete and indefinite as to render it, under the decisions, a parol contract, and hence not binding. It is by parol if it requires verbal testimony to prove any essential part of it. The statute of frauds requires that such a sale of land as was attempted must be in writing: Mellon v. Davison, 123 Pa. 298; Soles v. Hickman, 20 Pa. 180; Hammer v. McEldowney, 46 Pa. 334; Burns v. McCabe, 72 Pa. 309; Rineer v. Collins, 156 Pa. 342; Ross v. Allen, 25 Pa. 570; Phillips v. Swank, 120 Pa. 76.

It is admitted by the plaintiff that he agreed to relinquish his rights under the contract, in order that the property might be sold again. The property was sold in accordance therewith.

The plaintiff is not therefore entitled to relief in this action: Washabaugh v. Stauffer, 81* Pa. 497 ; Washabaugh v. Grimell, 32 Leg. Int. 5 ; Ong v. Campbell, 6 Watts, 392 ; Zeigler v. Houtz, 1 W. & S. 533.

The decree must conform to the prayer of the bill : Horton's App., 13 Pa. 67 ; Passayunk Bldg. Assn. App., 83 Pa. 441 ; Thomas v. Ellmaker, 1 Pars. 98 ; Daniel's Ch. Pl. & Pr. 6th. Am. ed. 378 ; Canal Co. v. Coal. Co., 21 Pa. 131 ; R. R. Co.'s App., 62 Pa. 218 ; Kelsey v. Murphy, 26 Pa. 78 ; Com. v. Canal Co., 43 Pa. 295 ; Stevens v. Guppy, 3 Russell, 171 ; Todd v. Gee, 17 Ves. 273 ; Am. Em. Co. v. Fuller, 83 Iowa, 599 ; Bank v. Field, 126 Mass. 345 ; Cummings v. Cummings, 75 Cal. 434 ; Daniel's Ch. Pl. & Pr. 6th Am. ed. 382.

*Thomas J. Martin, Jr.*, and *John A. Bickel*, for appellee, were not heard.

Per Curiam, May 11, 1896 :

The first, second and fifth specifications, relating to the findings of fact recited therein, are not sustained. An examination of the record has failed to convince us that there is any substantial error in either of the learned judge's findings, and, so far as they are necessary to support the decree, they must be accepted as verity. His conclusions of law, complained of in the third and fourth specifications, are also correct. We find nothing in either of the first five specifications that requires discussion.

While the elements of a proper decree—based upon the facts found by the court—are sufficiently presented in the fifth to the seventh specifications, inclusive, no formal decree appears to have been drawn by plaintiff's counsel and filed by the court. Such loose practice is not to be commended; and, if it were not for the fact that appellants have treated the learned judge's legal conclusions as, in effect, a final decree, we would be obliged to quash the appeal and remit the record for correction. As thus viewed by the appellants, however, the record may be considered amended in that regard.

The eighth to tenth specifications are not according to rule, in that they omit to recite the particular exceptions to which they respectively relate. But, waiving that irregularity, we

find nothing in either of the exceptions referred to that would justify a reversal or modification of the decree.   In view of the facts, properly found by the court upon sufficient evidence, we think no injustice was done to either of the appellants.

Decree affirmed and appeal dismissed at appellants' costs.