## Schulte v. Stern and Markmann.

*Vendor and vendee—Executory agreement to convey—Statute of Frauds—Specific performance.*

1. Where one executes an agreement to convey real estate as agent for a vendor in the presence of the principal, and with his consent and approval, the fact that the agency was not created by an instrument in writing is immaterial, and the Statute of Frauds does not apply to the case.

2. Under a clause in an executory agreement of sale, whereby the agreement "is to become null and void and all money paid on account thereof to be refunded unless the agreement is approved by the owner of the premises within five days from the date thereof," the vendor may disapprove the agreement for any cause, although the clause was inserted solely for the purpose of enabling him to make certain financial arrangements for paying off a mortgage upon the property, not yet due, and the mortgagee, after the agreement was executed, agreed to accept the money on the date of settlement.

Bill in equity to compel specific performance.   C. P. No. 2, Phila. Co., Dec. T., 1922, No. 10,716.

*Robert P. Shick*, for plaintiff.

*Loewenstein, Winokur & Baylson*, for Bernard Stern.

*Max Herzberg*, for M. Jacob Markmann.

GORDON, JR., J., Oct. 17, 1923.—This is a bill in equity to compel specific performance of a contract of sale of certain real estate, to wit, No. 5151 Wayne Avenue, in the City of Philadelphia.

On Feb. 21, 1923, the plaintiff's real estate agent, Julius S. Lam, met the defendants Bernard Stern and M. Jacob Markmann, his agent, and negotiated the sale of the property in question to the plaintiff for the sum of $42,000, to be paid in the manner provided in the agreement of sale, which was then drawn and, in the presence of the three, with the knowledge and consent of all parties, signed by the defendant, M. Jacob Markmann, as agent for the defendant Stern. At the same time Lam delivered to Stern and Markmann the plaintiff's check for $1000 on account of the purchase price, drawn to the order of Lam, and endorsed by him to the order of the defendant Markmann. This check was accepted and the receipt of it as deposit money was acknowledged on the agreement of sale.

One of the provisions of the agreement of sale was as follows: "This agreement is to become null and void and all money paid on account thereof is to be refunded, unless the agreement is approved by the owner of the premises within five (5) days from the date thereof." This clause was stamped on the agreement with a rubber stamp. It was testified, and we find, that the clause was inserted solely for the purpose of enabling the defendant Stern, the owner of the property, to make arrangements with the Philadelphia Company for the Guaranteeing Mortgages for the paying off of a mortgage then existing upon the property, and not yet due, it being understood that Stern would make prompt arrangements with the Philadelphia Company to this effect. On Feb. 27, 1923, or four days after the execution of the agreement, the Philadelphia Company, by letter addressed to the defendant Markmann, agreed to accept payment of the mortgage on the basis of principal, interest to date of settlement, satisfaction fee and a bonus of $250. This latter sum the plaintiff agreed to pay.

Notwithstanding that the purpose for which this provision was inserted in the agreement of sale was then thus accomplished, the defendant Stern refused to approve the agreement, and returned the check which he had received and accepted on account of the purchase money. Thereupon this

bill in equity was filed by the plaintiff to compel specific performance of the agreement.

We find that during the interval between the signing of the agreement and the refusal of Stern to approve it, he had received a higher offer for the property in question from a third person. This was his real reason for refusing to approve the agreement. The defendant admitted upon the witness-stand that the only reason given by him at the time the agreement of sale was entered into and signed by his agent in his presence for the insertion in it of the foregoing clause requiring his subsequent approval was the necessity for securing the consent of the Philadelphia Company for Guaranteeing Mortgages to a release of the existing mortgage. He claimed, however, that he had other and undisclosed reasons for the insertion of that clause. We do not believe that he had other reasons than the one mentioned. His testimony in this particular is false, and the additional and secret reasons now advanced by him had no existence in fact at the time. We are satisfied that the defendant has repented of his bargain with the plaintiff solely because of the higher offer for the property which he received shortly after the agreement of sale was entered into, and that this alone is the reason for the withholding of approval.

The defendant contends that he cannot be compelled to carry out the agreement of sale; first, because it appears on its face to have been executed by an agent, and, since the agency is not shown to have been created by an instrument in writing, under seal, the Statute of Frauds applies; second, because, under the clause already quoted, the contract is null and void without approval; and, third, because, being a married man and his wife not having joined in the agreement, he cannot be compelled to carry it out.

With the first of these contentions, that since the agreement was executed by an agent without written authoriy so to do, it is not enforceable, we cannot agree. The contract was signed by the defendant's agent in his presence and with his consent and his approval. This takes the case out of the operation of the Statute of Frauds. Markmann was merely the instrumentality by which the defendant, then present in person, executed this agreement, and we are of opinion that the defendant is as much bound by it as if he had signed the paper with his own hand. This is recognized by our authorities. See Fitzpatrick v. Engard, 175 Pa. 393. See, also, Story on Agency, 657; Mechem on Agency, § 96.

The defendant's first contention is not well taken. His second contention, however, that the contract is null and void because he refused to approve the agreement within five days from the date thereof, as stipulated in the clause heretofore referred to, is better founded. The plaintiff contends upon this point that the sole reason for the insertion of the clause in question was to enable the defendant to make arrangements with the Philadelphia Company for Guaranteeing Mortgages for the paying off of a mortgage then existing and not yet due; that these arrangements were made by the defendant in due time; and that the purpose for the insertion of the clause being thus accomplished, the defendant is not entitled to withhold his approval from the agreement and is equitably bound to carry it out. It is contended by the plaintiff that the doctrine of *expressio unius est exclusio alterius* applied to this situation, and that the defendant will not be heard now to set up additional and unmentioned reasons for withholding his approval. We are not satisfied that this contention of the plaintiff is sound. The clause in question is clear and unambiguous. The contract is to be "null and void" unless approved by the owner within five days. His right to withhold his approval is in no way

4 D. & C.

limited, nor is it made obligatory upon him to approve or ratify the agreement upon the condition that the Philadelphia Company for Guaranteeing Mortgages consent to the paying off of the mortgage. True it is that the only reason for the insertion of the clause which the defendant gave at the time was the necessity for securing the consent of the Philadelphia Company, that its consent was secured, and that abstract considerations of morals and fair dealing require him to carry out his bargain. He was not legally bound, however, to express all his reasons for reserving a subsequent unrestricted approval; and though we do not believe that he had any other reasons than the one expressed, we cannot read a limitation of his rights into the clear language of the agreement. To do so would be to give vitality to an instrument which the parties have solemnly agreed shall be void, and, by raising an obligation solely upon parol evidence, practically to nullify the operation of the Statute of Frauds.

This being our opinion on the controlling point of the case, the bill will have to be dismissed, and it is not necessary to discuss the remaining points raised by the parties.

### Decree.

And now, to wit, Oct. 17, 1923, this cause having came on to be heard at this term of court, upon bill, answers, replications and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That the bill be dismissed as to both the defendants.
2. Each party to pay his own costs in this proceeding.

The prothonotary will enter this decree *nisi* and give notice of the same to the parties or their counsel, and if no exceptions are filed within ten days thereafter, either party may present to the court a form of final decree then to be entered.

### Final decree.

And now, Oct. 31, 1923, this cause having come on to be heard at this term of court, upon bill, answers, replications and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That the bill be dismissed as to both the defendants.
2. Each party to pay his own cost in this proceeding.