## Costello's Nomination.

*Election law—Nomination petitions—Signature by agent—Act of July 12, 1913.*

Under the Act of July 12, 1913, P. L. 719, an elector is not required to sign a nomination petition personally, but may direct and authorize another to sign for him in his presence, and his signature so made is a lawful and valid signature of the elector.

Application to set aside petition purporting to nominate Raymond Costello as candidate for member of Ward Committee on the Republican Official Ballot for the 38th Division, 39th Ward. C. P. No. 2, Phila. Co., March T., 1926, No. 13111.

*Harry Felix,* for petitioner; *Hugh McAnany,* contra.

GORDON, JR., J., April 29, 1926.—Raymond Costello has filed his nomination paper for the office of member of the Ward Executive Committee of the Republican Party for the 38th Division of the 39th Ward of the City of Philadelphia. The paper contains twelve names, and the law requires ten

Costello's Nomination.

signatures to place a candidate's name in nomination. The petition before us prays that the said nomination paper of Raymond Costello be set aside upon the ground that, of the twelve signatures which it contains, four are forgeries, not having been signed by the electors themselves.

The evidence discloses that Daniel A. Fitzgerald, one of the signers of the petition, is not a qualified elector of the Republican Party, and his name should, therefore, be stricken off. The evidence further discloses that the name of Abe Forman was signed by his wife, Ida, at his request and direction, notwithstanding he was present and could have signed himself had he so desired; and that, similarly, the names of William Fineman, Cecelia Fineman and Sophie Fineman were all signed by Abe Fineman, the son of William and Sophie Fineman and the brother of Cecelia, at their direction and in their presence. It also appears that all of the four names were signed by the respective agents in good faith and without any fraudulent designs or criminal purposes. If these signatures are forgeries, the paper has been signed by only eight electors and the petition should be granted; otherwise it should be dismissed.

These facts raise the question, whether an elector, who desires to sign a nomination paper, may lawfully direct another to affix his name to it for him in his presence; or, to put it in another form, whether an authorized agent may lawfully sign a nomination paper for an elector. The Act of July 12, 1913, P. L. 719, which requires the filing of nomination papers in party primaries, contains no express restriction upon the manner in which such papers must be signed. It prescribes the qualifications which must be possessed by signers, the information respecting each signer which must be given, and the facts which must be sworn to by the affiant to the paper. Thus section 6 a provides that:

"Each signer of a nomination petition shall sign but one such petition for each office to be filled. . . . He shall also declare therein that he is a qualified elector of the county therein named; and in case the nomination is not to be made or candidates are not to be elected by the electors of the state at large, of the political district or division therein named, in which the nomination is to be made or the election is to be held. He shall add his occupation and residence, giving city, borough or township, with street and number, if any, and shall also add the date of signing. No nomination petition shall be circulated prior to sixty [now forty] days before the last day on which such petition may be filed, and no signature shall be counted unless it bears date within sixty [now forty] days of the last day for filing the same.

"Said nomination petition may be on one or more sheets, and different sheets must be used for signers resident in different counties. Each sheet shall have appended thereto the affidavit of some person—not necessarily a signer and not necessarily the same person on each sheet—setting forth that the affiant is a qualified elector of the state, or of the political district or division, as the case may be, referred to in said petition; his residence, giving city, borough or township, with' street and number, if any; that the signers signed with full knowledge of the contents of the petition; that their respective residences are correctly stated therein; that they all reside in the county named in the affidavit, and that each signed on the date set opposite his name; and that to the best of affiant's knowledge and belief the signers are qualified electors and members of the designated party of the state, or of the political district or division, as the case may be."

Section 8 of the act provides: "No nomination petition shall be refused or set aside except for . . . (c) want of a sufficient number of genuine signa-

tures of persons qualified, with respect to age, sex, residence and citizenship, to be electors."

Nowhere in these provisions do we find a direct requirement that an elector must personally affix his signature, or a prohibition upon his exercising his right to sign in any of the usual ways in which documents may be signed, and to so hold would be reading into the act limitations which the legislature has not seen fit to put there.    It has been suggested that these provisions of the act, when read together as a whole, disclose a legislative intent, or at least assumption, that the elector is to sign the paper himself, and that the opportunity for imposition and fraudulent practices, which would be opened by holding otherwise, requires such a limitation upon the manner of signing to be read into the act.    We cannot accede to this reasoning, however superficially forceful it may appear.    It overlooks several important and controlling considerations.    While, of course, with legislation of this kind, the method of procedure laid down must be strictly followed, it may be said to be a cardinal principle of interpretation that judicial construction should be directed to according the widest possible opportunity to the citizen for the untrammeled exercise of his political rights.    Where the legislature has clearly spoken, its will must be followed.    But where it is silent, or its meaning susceptible of different interpretations, that should be adopted which leaves the citizen freest to act.    The argument that the general scheme of this legislation implies a legislative intent that the elector must personally sign the nomination paper finds little support, when we consider that no provision is made for the exercise of the right of nomination by those who, through disability, cannot act except through an agent, while in analogous legislation, such as the regulation of the right to vote, special provision is made for the exercise of the right by such persons through an agent.

Again, the very danger that is suggested as a possible result from permitting the elector to sign by an agent is in itself a reason for concluding that the legislature would have been careful to expressly prohibit such a practice had it deemed the danger real, or this method of preventing it preferable to the risk incident to refraining from restricting the elector.    Indeed, in interpreting a statute designed to prevent fraud in other connections, the statute of frauds in sales of realty, equity has held that, although under it an agent must be authorized in writing to sign for his principal, the statute has no application to the signing of a contract involving the sale of realty by an agent in the principal's name, in his presence and at his express direction. (Fitzpatrick v. Engard, 175 Pa. 393.)    The reasoning by which this decision is reached is forcefully stated in Story on Agency, § 57, thus: "If the principal is present and verbally or impliedly authorizes the agent to affix his name to a deed, it becomes the deed of the principal and is as much binding on him as if he had personally sealed and executed it.    The distinction may seem nice and refined; but it proceeds upon the ground that when the principal is present, the act of signing and sealing is to be deemed his personal act, as much as if he held the pen and another person guided his hand and pressed it on the seal."

"What is done in the presence and by the expressed or implied direction of the principal is in law his act, and an agent may, therefore, be authorized by parol to bind his principal, even upon sealed instruments, if the instrument be executed in the presence of the principal and by his direction or tacit consent:" Mechem on Agency, § 96.

Such was the situation in the present case.    In each instance, the elector's name was signed by his properly authorized agent immediately on receipt of

the authority, in good faith and in his presence. This was the equivalent of the personal act of the elector, and to strike it down would defeat his honest effort to exercise one of the high privileges of citizenship, through apprehension, apparently unfelt by the law-making body, that some might be tempted to forgery and fraud, and, by a judicially raised technicality, would prevent a body of citizens from effectively supporting a candidate of their own choosing. We see no compelling reason for doing so, either in the act itself or in the arguments advanced for adopting such an interpretation of it.

The only case in Pennsylvania which has been called to our attention as dealing with this question is Lavery's Nomination Papers, 71 Pitts. L. J. 914, in which it is held that an elector must personally sign the paper. This case was decided under the Act of July 9, 1919, P. L. 855, which is an amendment to the Acts of 1893 and 1897. These acts do not relate to party primaries, and the case might be distinguished upon that ground. However, the decision merely states the law without any discussion of the reasons which led the learned judge who decided it to the conclusion which he reaches, and is of little value in a discussion of the subject. So far, therefore, as it may be viewed as a precedent, we are not inclined to follow it for the reasons already given.

We, therefore, conclude that an elector in signing a nomination paper is not required to do so personally, but may direct and authorize another to sign for him, in his presence, and that a signature so made is the lawful and valid signature of the elector.

The petition is accordingly dismissed.