## David McKibbin, Appellant, *v.* Jacob M. Peters.

*Contract — Building contract—Sale of ground—Tender of redemption money.*

A entered into a building contract whereby he agreed to convey certain land to B, reserving to himself ground rents, and, in order to assist B in erecting buildings on the land, he agreed to advance certain sums of money from time to time as the buildings progressed. The redemption value of the ground rents was made equal to the value of the land and the advances. B's rights under the contract became vested in other parties who, in order to extinguish the ground rents, tendered to A an amount which was obtained by deducting interest on the advances. A had paid all the advances when demanded, but there were certain advances still due which had not been demanded. A refused the tender and claimed an amount which did not allow for the advances still unpaid. *Held,* (1) that the transaction under the building agreement constituted a sale of the land; (2) that as the advance payments were to be made at a future time, and as all had been paid when demanded, no interest was chargeable against A; (3) that on a bill in equity to enforce the extinguishment of the ground rent A should pay the costs, inasmuch as he had been in fault in making an excessive demand.

Argued April 5, 1898. Appeal, No. 55, Jan. T., 1898, by plaintiff, from decree of C. P. No. 2, Phila. Co., March T., 1894, No. 1,395, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity to enforce the extinguishment of ground rents.

The case was heard on bill, answer and proof.

The material part of exhibit " A " in plaintiff's bill is as follows:

" Whereas, the said Jacob M. Peters being seized of all that certain lot or piece of ground situate on the southwest side of Orleans street and southeast side of Ruth street; also all that certain lot or piece of ground situate on the southeasterly side of said Ruth street; this agreement witnesseth:

" Article 1. The said Jacob M. Peters agrees to sell and the said Anthony J. Fuhrer agrees to purchase the said lot or piece of ground first above described for the price or sum of two thousand four hundred and fifty dollars and the lot of ground second above described for the price or sum of two thousand

four hundred and eighty-one dollars and the said Jacob M. Peters agrees to execute to the said Anthony J. Fuhrer a good and sufficient conveyance of the said large lot of ground so as to vest in the said Anthony J. Fuhrer his heirs and assigns a good title in fee simple in the same.

"Article 2. And the said Jacob M. Peters in order to assist the said Anthony J. Fuhrer in the erection of said dwelling houses, agrees to advance to him the sum of four thousand nine hundred and fifty dollars in manner and times as hereinafter set forth.

"Article 3. The said Anthony J. Fuhrer to secure the payment of the said purchase-money and the money so to be advanced as aforesaid agrees to join in the deed conveying to him the said two lots of ground and to pay a certain yearly ground rent of five hundred and ninety-two dollars and eighty-six cents in equal half yearly payments on the first day of February and August in every year without deduction for taxes, etc. The first half yearly payment to be made on the first day of February, A. D. 1893. The said deed to contain all the usual covenants of a ground rent deed the principal of the said yearly ground rent, viz : nine thousand eight hundred and eighty-one dollars is composed of the said two lots of land and the sum of four thousand nine hundred and fifty dollars to be advanced as aforesaid.

"Article 4. The said Anthony J. Fuhrer in order to further and better secure the purchase money of the said lot of ground and the advances so as aforesaid agreed to be made shall and will within the space of six months from the date hereof erect or cause to be erected and completely finished on the four lots, four houses and on the said six lots, six houses, to be built at the cost and expense of said Anthony J. Fuhrer in good and workmanlike manner. Provided however, and it is hereby expressly understood and agreed that the debts incurred for the work, labor and materials or otherwise, howsoever in and about the erection and construction of the said buildings shall in nowise be taken or held to be prior liens or incumbrances in law or in equity to the said yearly ground rent or any part of the purchase or advance money thereby secured or intended to be secured but shall in all respects be subject to and payable after the same.

"Article 5. The said Jacob M. Peters, in consideration of

the premises, shall advance and pay unto the said Anthony J. Fuhrer the aforesaid sum of four thousand nine hundred and fifty dollars towards the erection of the said four houses on Orleans street, and six on Ruth street, in the following manner: . . . ."

The material part of exhibit "B," in plaintiff's bill is as follows:

"Whereas the said Jacob M. Peters being seized of all that certain lot or piece of ground, situate in the 25th ward of the city of Philadelphia . . . .

"And whereas the said Anthony J. Fuhrer is desirous of purchasing the said lot of ground with the intention of improving the same by the erection of dwelling houses thereon.

"Now this agreement witnesseth, that the said Jacob M. Peters and the said Anthony J. Fuhrer do mutually covenant and agree in respect to said premises as follows:

"Article 1. The said Jacob M. Peters agrees to sell and the said Anthony J. Fuhrer agrees to purchase the said lot or piece of ground for the price or sum of one thousand and seventy-four dollars. And the said Jacob M. Peters agrees to execute to the said Anthony J. Fuhrer a good and sufficient conveyance of the said lot of ground so as to vest in the said Anthony J. Fuhrer his heirs and assigns a good title in fee simple in the same.

"Article 2. And the said Jacob M. Peters in order to assist the said Anthony J. Fuhrer in the erection of the said dwelling houses agrees to advance to him the sum of nine hundred dollars, in manner and times as hereinafter set forth.

"Article 3. The said Anthony J. Fuhrer to secure the payment of the said purchase money and the money so to be advanced as aforesaid, agrees to join in the deed conveying to him the said lot of ground and to pay a certain yearly ground rent of one hundred and eighteen dollars and forty-four cents in equal half-yearly payments on the 1st day of the months of April and October in every year without deduction for taxes. The first half-yearly payment to be made on the 1st day of April, A. D. 1893. The said deed to contain all the usual covenants of a ground rent deed the principal of the said yearly ground rent, viz: Nineteen hundred and seventy-four dollars is composed of the said lot of ground and the sum of nine hundred dollars to be advanced as aforesaid.

" Article 4. The said Anthony J. Fuhrer in order to further and better secure the purchase money of the said lot of ground and the advances so as aforesaid agreed to be made, shall and will within the space of six months from the date hereof, erect or cause to be erected and completely finished on said lot of ground two houses, of not less . . . . and all are to be built at the costs and expense of said Anthony J. Fuhrer in good and workmanlike manner. Provided, however, and it is hereby expressly understood and agreed that the debts incurred for the work, labor and materials or otherwise, howsoever, in and about the erection and construction of the said buildings, shall in no wise be taken or held to be prior liens or incumbrances in law or in equity to the said yearly ground rent or any part of the purchase or advance money thereby secured or intended to be secured, but shall in all respects be subject to and payable after the same.

" Article 5. The said Jacob M. Peters in consideration of the premises shall advance and pay unto the said Anthony J. Fuhrer the aforesaid sum of nine hundred dollars towards the erection of the said two houses in the following manner. . . ."

SULZBERGER, J., filed the following opinion :

The court finds the following facts :

1. On July 29, 1892, Jacob M. Peters, the defendant, and one Anthony J. Fuhrer, executed the sealed agreement printed as exhibit " A " of the bill, which may be considered as incorporated in this report.

2. On August 15, 1892, the same parties executed the sealed agreement printed as exhibit " B " of the bill, which may be considered as incorporated in this report.

3. Four thousand nine hundred and thirty-one dollars was the agreed consideration for the ground mentioned in exhibit " A," and $1,074 was the agreed consideration for the ground mentioned in exhibit " B."

4. By the terms of exhibit " A," it was provided that the defendant should advance to Fuhrer, for the purpose of assisting him in the building operation mentioned in said agreement, the sum of $4,950 to be paid from time to time as the construction of the buildings progressed ; and, by the terms of exhibit " B," it was provided that the defendant should advance to

Fuhrer, for the purpose of assisting him in the building opera-
tion mentioned in the said agreement, the sum of $900, to be
paid from time to time as the construction of the buildings pro-
gressed.

5. For the purpose of securing as well the said advances as
the purchase money for the said lots of ground, it was further
provided by said agreements that the said defendant should
convey the said premises to Fuhrer, reserving unto said de-
fendant two ground rents of $592.86 per annum and $118.44
per annum, respectively, and charging the same upon the said
premises, respectively. The said deeds were to contain all the
usual covenants of a ground-rent deed, and the principal or
redemption money therein to be named was to be the amount of
the price of the land added to the amounts agreed to be ad-
vanced. And it was further agreed that the said agreements
should bind the heirs, executors, administrators and assigns of
the said parties.

6. In pursuance of said agreements, ground-rent deeds were
executed and delivered by the defendant to Fuhrer for the
ground mentioned in said two agreements, the first, dated
July 29, 1892, duly recorded, reserving a rent of $592.86 per
annum, payable half-yearly on the first day of the months of
February and August in each year, and the other, dated Au-
gust 15, 1892, duly recorded, reserving a rent of $118.44 per
annum, payable half-yearly on the first day of the months of
April and October in each year. The said ground rents are
recited in said deeds as being redeemable upon payment of the
sum of $9,881 and the sum of $1,974, respectively. Both of
these sums were the agreed cost of the ground, added to the
agreed advances, in the respective agreements.

7. After the execution and delivery of the agreements and
deeds aforesaid, the said Fuhrer proceeded to build as agreed,
and from time to time received from said defendant advances
for all houses mentioned in both agreements, amounting in all
to $4,260, the total sums agreed to be advanced being $5,850.

8. Under and by virtue of a writ of fi. fa. issued against said
Fuhrer, his right, title and interest in said premises were sold by
the sheriff on the first Monday of July, 1893, and by various
conveyances the said title became vested in the plaintiff on
May 17, 1894, who thereby became the owner in fee of the lots

mentioned in exhibits " A " and " B " and the buildings thereon erected.

9. By various assignments, the said plaintiff acquired, on May 2, 1894, all the rights of Anthony J. Fuhrer to the moneys due or hereafter to grow due to him from the said defendant under the terms of exhibits " A " and " B."

10. In November, 1893, the plaintiff and others then interested with him as equitable terre-tenants of the premises described in exhibits " A " and " B," notified the defendant that they desired to pay off and extinguish the said ground rents, and tendered the defendant two deeds for execution, and on November 23, 1893, tendered him in lawful money of the United States, the sum of $11,000 in full settlement and extinguishment of the said ground rents and their arrears, with interest and costs, together with agreements, exhibits " A " and " B," for cancelation, which tender the defendant declined as insufficient, claiming that the amount rightfully to be paid was $12,798.53.

11. The said houses have been completed substantially as required by said contracts.

12. The said defendant has not defaulted on any of the payments by him to be made under exhibits " A " and " B," the unpaid amounts having never been demanded by the plaintiff or his predecessors in the estate.

13. The defendant was, on November 23, 1893, entitled to receive from the sheriff, and on December 19, 1893, actually did receive from him, $199, on account of arrears of the said ground rents.

Upon the facts found, we are to determine whether the plaintiff, on November 23, 1893, by the tender then made by the defendant, became entitled to the extinguishment of the two ground rents.

By the terms of the ground-rent deeds, the amounts required to be paid for extinguishment on November 23, 1893, were as follows :

| | | |
|---|---|---|
| Amount specified for redemption, . . | $11,855 | 00 |
| Arrears of rent, . . . . . . | 918 | 44 |
| Interest on arrears, . . . . . . | 25 | 09 |
| Total, . . . . . . | $12,798 | 53 |

|  |  |  |
|---|---|---|
| Amount brought forward | $12,798 | 53 |
| The defendant owed the plaintiff on that day for advances to be made under the contract and not yet made, . . . . . | 1,590 | 00 |
|  | $11,208 | 53 |
| The defendant was entitled on that day to receive from the sheriff on account of his claim for arrears, . . . . . | 199 | 00 |
| Net amount required for extinguishment, | $11,009 | 53 |

The tender of $11,000 to pay this amount was obviously ineffective.

The rule appears to be inflexible that a tender of part of an entire demand is inoperative : Dixon v. Clark, 5 Man., Gr. & Scott, 365.

The plaintiff, in order to avoid this result, contends that the ground-rent deeds are not to be taken as the basis for ascertaining the amount due, because the true contract is set down in the preliminary agreements, exhibits " A " and " B."

The words in the contract, exhibit " A," and the corresponding words in the contract, exhibit " B," upon which the plaintiff relies, are to be found in article 3 of each of the said contracts. That article covenants for the joinder by the vendee of the land in a ground-rent deed, whereby he should become covenator, in consideration for which the vendor of the land is to become covenantee. The initial words of the article are as follows: " The said Anthony J. Fuhrer, to secure the payment of the said purchase money and the money so to be advanced as aforesaid, agrees to join," etc.

From these words the plaintiff argues that the contract is merely for the loan of money. An essential and characteristic feature of a loan is, that it be returnable. " The absolute property in the subject-matter of the loan passes, together with the transfer of the possession, to the hirer or borrower, and the latter becomes indebted to the lender in an equivalent in value and amount, with interest, which must be paid and rendered to the latter at the time agreed upon, or within a reasonable period after demand made, in case no time for its return has been limited : " Addison on Contracts (7th London ed.), 621.

An examination of the contracts (exhibits " A " and " B ")

fails to disclose any liability on the part of Fuhrer, the covenantor, to repay the money. The obvious meaning of the agreement, therefore, is that the covenantor, in effect, sells to the covenantee an estate in fee simple in a rent, and the price paid therefor by the covenantee is the sum of two items—one the purchase money of the land, and the other the amount of advances thereafter to be made by the covenantee. This is a contract in the nature of an outright sale, in which the covenantor has already delivered the thing sold, to wit: the deed for the rent; and the covenantee has made the partial payments agreed on, namely, the price of the purchase money and some of the advances. It is true that there are still mutual covenants to be performed, namely, the covenantor is to finish certain buildings, and the covenantee is to advance more moneys. These, however, are auxiliary covenants, and do not relate directly to the principal matter of contract between the parties, such principal matter being the grant of a rent and the payment of its price. Auxiliary covenants such as these cannot have the effect to utterly change the nature of the principal covenant, their office being merely to aid or support it. Nor does the covenant for redemption of the ground rent help the plaintiff. Were it otherwise, all the thousands of ground-rent deeds containing clauses of redemption, made in Pennsylvania during the last two hundred years, would have been mere mortgages. Upon this ground, then, the plaintiff cannot stand; but even if he were right in his contention that the transaction was in substance a loan, he would not have advanced a step. If the transaction was a loan, then the ground rent was given as collateral security for the loan; and if this absolute deed was given as collateral security, then it was given in mortgage: Guthrie v. Kahle, 46 Pa. 331; McClurkan v. Thompson, 69 Pa. 305. When this point is reached, we are confronted by the act of June 8, 1881, entitled "An act relating to and defining defeasances in this commonwealth." By the first and only section of this act it is provided: "That no defeasance to any deed for real estate regular and absolute upon its face, made after the passage of this act, shall have the effect of reducing it to a mortgage, unless the said defeasance is made at the time the deed is made, and is in writing, signed, sealed, acknowledged and delivered by the grantee in the deed to the grantor, and is

recorded in the office for the recording of deeds and mortgages, in the county wherein the said lands are situated, within sixty days from the execution thereof."

Our courts have always held that ground rents are real estate, bound by judgment, and that they may be mortgaged like other real estate. Hypercriticism might urge a doubt whether the statute was applicable to rents, in view of the use of the words "said lands" near the end of the statute. The word "said," however, seems to indicate that "lands" and "real estate" are here used synonymously.

When closely examined, the plaintiff's right is made to turn upon a scrivener's error. In drawing the agreement for the advances, he appears to have used the form appropriate where advance money mortgages, and not ground rents, are to be given. So trifling a blunder will not vitiate a deed nor lose an estate. Indeed, the plaintiff himself somewhat inconsistently relies upon the defendant's duty to collect $199 from the sheriff as the basis of the validity of his tender; but the defendant could have had no right to this sum of $199, except as the owner of the rent in question. Upon the whole case, then, we see no ground for sustaining the plaintiff's contention. Were the transaction merely usurious and oppressive, and the form it was made to assume merely colorable, there might be ground for the interposition of a chancellor. Here, however, we have parties of mature age, of competent understanding, willing and able to contract, and who have contracted. Under such circumstances equity, like law, demands that they abide by their contract.

The justice of this conclusion becomes obvious when the true point at issue is made to appear. The defendant bought a ground rent, a part of the consideration money for which was payable at a future time. The plaintiff, in substance, contends that on these delayed payments he has an equitable right to demand interest from the date of the deeds, because he began to pay his ground rent from that date, under the terms of the deeds. Interest, however, in the view of our law, if not contracted for, is in the nature of a penalty, and a penalty cannot be imposed save for some default. It is not pretended that the defendant failed to pay any of his advances at the time when they were properly demandable, nor, indeed, is he alleged to

have ever refused the payment of any. Undoubtedly the plaintiff is entitled to obtain from the defendant deeds of extinguishment of the ground rents upon the payment of the amount required for their redemption. The right of the plaintiff being so obvious, and his willingness to exercise it having been shown so emphatically, one wonders how this controversy could have arisen. We are bound to say that the defendant does not appear to be free from blame. He admits that on November 23, 1893, he claimed from the plaintiff the sum of $12,798.53 as the amount proper to be paid to him before he should be required to extinguish the ground rents. In this he was in error. The plaintiff was obviously entitled to a credit of $1,590 for the amounts covenanted by the defendant to be advanced, from which covenant the said plaintiff then and there proposed to release him, and actually tendered him a release. The plaintiff was, furthermore, entitled to a credit of $199 for arrears of rent which stood to the credit of the defendant with the sheriff. When plaintiff on that day tendered him the $11,000, the defendant, if he had not made an erroneous and excessive claim, might have simply stood mute. But, instead of this, he had made an alternative claim of $11,998.53, by saying that he was willing to deduct $800 from the amount first demanded. This alternative claim was likewise erroneous and excessive. By this conduct of the defendant, he, in effect, gave notice to the plaintiff that the disparity between their calculations was so large as to be irreconcilable, whereas in reality there was only a trifling difference between them. By this error of the defendant he defeated the settlement which would doubtless have been made then and there, and the flood of litigation thus loosed by him was swollen by new suits for arrears, in which the plaintiff has been uselessly subjected to additional costs and expenses. The defendant having by his conduct produced this litigation, it is only just that he pay the costs.

And now, January 19, 1897, it is ordered that the prothonotary notify the parties or their counsel of the filing of this report and opinion, and if no exceptions are filed thereto within twenty days, a decree will be entered ordering the said defendant, upon the receipt by him of the redemption money (to be computed according to the principles of the foregoing opinion),

being the sum of $   ·, as well as of a full release and discharge of all his liability for further payments under the contracts, exhibits " A " and " B," and of the costs on actions for arrears by him heretofore brought, to execute and deliver to plaintiff, his heirs or assigns, due and legal releases and extinguishments of the aforesaid ground rents, and to enter satisfaction in all the suits for arrears brought on the said ground rents, the said defendant to pay all the costs of this proceeding.

*Error assigned* was the decree of the court.

*Wayne P. Rambo*, with him *Ormond Rambo*, for appellant. —The contracts provide for the making of the ground rent deeds as security for the payment of the purchase money, and the money so to be advanced. The ground rent deeds were executed as a part of and in fulfilment of the terms of the contract, and bear the same date as the contracts respectively.

In construing a deed the court places itself as nearly as possible in the situation of the contracting parties. Their intent will be ascertained in the same manner as any other contract: 3 Washburn on Real Property (3d ed.), 333.

No form of contract the parties may adopt will protect or secure interest in excess of the legal rate : Large v. Passmore, 5 S. & R. 51; Grubb v. Brooke, 47 Pa. 485 ; Voight v. Rambo, 1 Phila. 146 ; Fitzsimons v. Baum, 44 Pa. 32 ; Insurance Co. v. Bruner, 1 W. N. C. 147; Oyster v. Longnecker, 16 Pa. 269 ; Warren's Appeal, 43 Leg. Int. 324; Bispham's Equity, p. 318, sec. 222 ; Campbell v. Sloan, 62 Pa. 481; McAllister's Appeal, 59 Pa. 204; Earnest v. Hoskins, 100 Pa. 551; Hartranft v. Uhlinger, 115 Pa. 270.

There was a proportional failure of consideration as to the amount of the unpaid advances : Juvenal v. Jackson, 14 Pa. 524.

The $199 in the sheriff's hands belonged to Peters upon the day of the sale, and upon the day of the tender : Mather v. McMichael, 13 Pa. 301.

The ground rent had to the extent of the money in the sheriff's hands been paid by operation of law: Foulke v. Millard, 108 Pa. 230. The $11,000 tendered on November 23, 1893, was, therefore, a sufficient tender, defendant alleging upon the stand at that time that there was due him $11,038 and some

cents, including his costs, and not crediting the $199 in the sheriff's hands.

*B. Woodward*, for appellee, cited Grubb's App., 90 Pa. 228; Molly v. Ulrich, 133 Pa. 44; Becker v. Howard, 75 Wis. 415; Hinkley v. Walters, 8 Watts, 260; Gilmore v. Reed, 76 Pa. 462; Gorforth v. Bradley, 2 Ves. Jr. 671; Cary v. Bancroft, 14 Pick. 315; Bank v. Howard, 13 Mass. 235; Hughes v. Daniells, 87 Mich. 190; City Councils v. Water Works Co., 77 Ala. 256.

PER CURIAM, April 18, 1898:

We find no error in the learned trial judge's findings of fact or in his conclusions of law. The questions involved have been so fully considered and so satisfactorily disposed of by him that nothing can be profitably added to what he has so well said. On his opinion the decree is affirmed and appeal dismissed at appellant's costs.