## Shaeffer v. Baeringer

*Myron Jacoby*, for plaintiff.
*Paul Uetz* and *J. Joseph Stratton*, for defendants.

OLIVER, P. J., January 21, 1942.—Plaintiff, as owner of premises 2824-26 West Dauphin Street, in the City of Philadelphia, instituted proceedings under the Act of May 4, 1927, P. L. 710, 21 PS §§733, 734, to compel assignment of two mortgages held by defendant on these premises. The bill of complaint sets forth the

following facts: Title to the premises is held by plaintiff under a sheriff's deed, and they are now occupied by his tenant. The two mortgages held by defendant, as assignee of the original mortgagees, aggregate $2,354.29. On May 19, 1941, plaintiff tendered to defendant the full amount of the mortgages together with interest and other charges to which defendant was entitled. He requested, at that time, that defendant assign the mortgages to plaintiff's nominee, but the tender and request were refused, whereupon plaintiff proceeded, under the Act of 1927, to file his complaint asking the court to compel the assignment. To this bill defendant filed preliminary objections principally on the ground that the tenant had an "interest in the lands" within the terms of the statute, and that plaintiff's failure to join the tenant in his application for relief was fatal to the proceedings, since the act provides:

"No . . . decree [compelling an assignment] shall be entered unless it shall appear to the court that all parties holding any interest in the lands so encumbered have joined in the application for the assignment of such mortgage. . . .": Act of May 4, 1927, P. L. 710, sec. 2, 21 PS §734.

The preliminary objections were dismissed on grounds set forth in an opinion by this court. However, at the hearing on the merits of the case, Lloyd E. Sattler, the tenant, was permitted to intervene in the proceedings.

Pursuant to leave granted by the court upon dismissal of the preliminary objections, defendant filed an answer to the merits of the complaint. Defendant admits therein all the averments of the bill, except in the following particulars: It is averred that one Benjamin A. Freedman is the real owner of the premises involved, despite the fact that plaintiff is the registered owner thereof; it is denied that the principal of the second mortgage has been reduced to the amount averred by plaintiff; and it is also denied that the second mort-

gage is now due and payable, as an agreement was allegedly executed on March 26, 1940, extending it for a period of five years. For these reasons, and for the additional reason that the entire proceedings are claimed to have been instituted with the ultimate intention of harassing and annoying the tenant in possession of the premises, defendant contends that plaintiff is not entitled to relief under the statute. Defendant states further that, despite his refusal to *assign* the first mortgage, he has been and is willing to *satisfy* it upon payment of the principal, interest, and satisfaction fee.

On the basis of defendant's admissions in his answer, plaintiff obtained a rule to show cause why the bill should not be taken pro confesso as to the first mortgage alone, with leave to proceed as to the second mortgage. For reasons set forth more fully in the discussion which follows, this rule is discharged; and we now proceed to determination of plaintiff's right to simultaneous assignment of *both* mortgages as requested by him in his original bill.

### *Findings of fact*

The chancellor makes the following findings of fact:

1. Plaintiff, Martin L. Shaeffer, is the registered owner of premises 2824-26 West Dauphin Street, in the City of Philadelphia, by virtue of a sheriff's deed, dated October 7, 1940, and recorded in the Office for the Recording of Deeds in and for the City and County of Philadelphia in Deed Book D. W. H. no. 873, p. 120, etc.

2. Benjamin A. Freedman is admittedly the real owner thereof.

3. The premises were acquired subject to two mortgages, the first given by Oscar Gimelson to Peoples Trust Company of Philadelphia in the principal amount of $3,000, bearing date December 14, 1916, and recorded in Mortgage Book J. M. H. no. 249, p. 394, etc.; the second given by George E. Sattler to the James B.

Sheehan Building & Loan Association in the principal amount of $2,000, bearing date September 17, 1930, and recorded in Mortgage Book J. M. H. no. 6928, p. 329, etc.; and subject also to the leasehold of Lloyd E. Sattler, the tenant presently occupying the premises.

4. Defendant, Ira Baeringer, is presently the nominal holder of both mortgages, and the respective bonds and warrants accompanying them.

5. Defendant, Ira Baeringer, holds the mortgages on the behalf of Dick Crean.

6. Defendant, as holder of the second mortgage, did not join in or assent to the application for an assignment of the first mortgage, alone or together with the second mortgage.

7. As of May 19, 1941, the principal of the first mortgage had been reduced to $2,100, and was past due, according to the terms of the mortgage.

8. On May 19, 1941, plaintiff, through his attorney, Myron Jacoby, tendered to defendant a certified check for $2,198.50, representing the full amount due on the first mortgage, to wit, $2,100, together with interest thereon, at the rate of five percent per year from June 14, 1940, to May 20, 1941, in the amount of $98, and the sum of 50 cents for the cost of the acknowledgment to an assignment, and requested defendant to assign to plaintiff's nominee the first mortgage with its bond and warrant. The tender was rejected and the assignment refused.

9. As of February 2, 1940, the principal of the second mortgage held by the James B. Sheehan Building & Loan Association had been reduced to the sum of $1,154.99.

10. The payments made by Lloyd E. Sattler to the James B. Sheehan Building & Loan Association, from January 1, 1937, to October 16, 1939, totaling $820, represented payments toward the reduction of the principal of the second mortgage, and not instalments on the purchase thereof.

11. On March 15, 1940, the second mortgage was assigned by the James B. Sheehan Building & Loan Association to Hilda E. Sattler, wife of Lloyd E. Sattler, for a total consideration of $800.

12. The sum of $800 paid for the purchase of the second mortgage was advanced by Dick Crean in the form of a check payable to the order of J. Harry Wagner, attorney for Hilda E. Sattler; and subsequent to her acquisition of the mortgage Hilda E. Sattler assigned the mortgage, bond, and warrant to defendant Ira Baeringer, as nominee of Dick Crean, to secure repayment of the advance of $800.

13. Defendant, Ira Baeringer, still holds title to the second mortgage as security for the repayment of this $800 advance.

14. As of May 19, 1941, the second mortgage had matured according to its terms, and was past due on its face.

15. There was no valid agreement between George E. Sattler and Ira Baeringer extending the term of the second mortgage beyond the original date of its expiration.

16. The alleged extension agreement was never recorded.

17. George E. Sattler, who allegedly agreed with Ira Baeringer to an extension of the second mortgage, died July 13, 1941.

18. On May 19, 1941, plaintiff, through his attorney, Myron Jacoby, tendered to defendant a certified check of $1,234.44, representing substantially the full amount due on the second mortgage, to wit, $1,154.29 (instead of $1,154.99), together with interest thereon at the rate of six percent per year from March 26, 1940, to May 20, 1941, in the amount of $79.65, and the sum of 50 cents for cost of acknowledgment to an assignment, and requested of defendant an assignment to plaintiff's nominee, of the second mortgage with its bond and war-

rant. The tender was rejected and the assignment refused.

19. Since June 1, 1941, defendant has collected and retained rentals from the tenant now in possession of the premises in the amount of $232.75, to be applied toward reduction of the principal amount due on the second mortgage.

20. Plaintiff at all times has been, and now is ready, willing, and able to pay defendant the sum of $2,198.50 for a proper assignment of the first mortgage, and the sum of $1,235.19 less $232.75, or $1,002.44, for a proper assignment of the second mortgage.

## Discussion

This court, in its opinion dismissing defendant's preliminary objections, rejected the contention that a tenant for years has such an interest in land that failure to join him in the application for assignment under the Act of 1927 is fatal to proceedings thereunder. However, defendant persists in his assertion to the contrary. The same position is taken by Lloyd E. Sattler, the tenant, who was permitted by us to intervene in these proceedings, despite our conviction that his assent was not necessary to the institution of plaintiff's action. As authority for their argument defendants cite several cases in which our Supreme Court has permitted tenants for years to compel assignments to them of mortgages past due, upon tender to the mortgagees of the money to which they were entitled. Particular emphasis is placed upon the decision in Hopkins Manufacturing Co. v. Ketterer, 237 Pa. 285 (1912), which, in turn, relies upon Wunderle v. Ellis, 212 Pa. 618 (1905), as authority for the relief given by the court.

We were well aware of these decisions when we considered defendant's preliminary objections, and it was our opinion then, as it is now, that they are readily distinguishable and do not compel a conclusion contrary to that reached in our decision. In each of these

cases, action was brought in equity by tenants for years to compel assignment of matured mortgages by mortgagees upon tender to them of all sums due. There was in effect, at that time, the Act of June 24, 1885, P. L. 157, 21 PS §§731, 732, which is the forerunner of the present Act of 1927. It was there provided that an assignment might be compelled in certain cases by "any person . . . holding lands incumbered by a mortgage". There is no specific reference to tenants for years; hence, it was seriously doubted whether statutory authority existed extending to them any such privilege. Thus, in Wunderle v. Ellis, supra, at page 621, Justice Mitchell stated that a tenant for years "has not perhaps strictly the right to demand a written assignment of the mortgage", nevertheless, relief was granted in that case on the equitable principle of subrogation. Subsequently the case of Hopkins Manufacturing Co. v. Ketterer, supra, was decided and similar relief afforded, the court citing Wunderle v. Ellis, supra, as authority for its decision. In neither instance, however, did the owner of the fee or reversioner assert any right to an assignment, hence there was no occasion for the court to balance the respective interests of the tenant for years and the holder of the fee in compelling an assignment. Consequently, these cases are not authority for the proposition that, as against the owner of the fee, the equity of a tenant for years is such an "interest in land" that it may be asserted to preclude the owner from tendering payment of the mortgage debt and compelling an assignment to him under the Act of 1927. Hence, we reassert our opinion that the assent of Lloyd E. Sattler, the tenant of the premises here involved, was unnecessary for initiation of proceedings to compel assignment of the mortgages held by defendant.

On the basis of defendant's admissions with respect to the first mortgage, plaintiff obtained a rule to show cause why a decree pro confesso should not be entered

compelling assignment of the first mortgage alone. That rule must be discharged, for we are now convinced that such a decree cannot be entered in these proceedings, even if, pursuant to Equity Rule 91, we were to adopt procedure analogous to that in actions at law allowing judgment for want of a sufficient affidavit of defense as to part of a claim.[1] The Act of 1927 provides that "No . . . decree [compelling assignment of a mortgage] shall be entered unless it shall appear to the court that all parties holding any interest in the lands so encumbered have joined in the application for the assignment *of such mortgage* . . .": Act of 1927, supra, sec. 2, 21 PS §734 (italics supplied). Thus, where there are two mortgages outstanding, a decree compelling assignment of the first mortgage can be rendered only after assent of the second mortgagee is made to appear to the court, for the second mortgagee holds an "interest in land" within the meaning of this provision: Green et al. v. Second Allegheny Building Assn. et al., 311 Pa. 305 (1933) ; Kiedaisch et ux. v. Elkins Park National Bank et al., 325 Pa. 241 (1937). That this rule is applicable even though one person holds both mortgages has been stated recently by our Supreme Court, although it was only by way of dictum: see Kiedaisch et ux. v. Elkins Park National Bank et al., supra, at pages 250-251. Plaintiffs in the Kiedaisch case had owned certain real estate subject to a first mortgage on which they were the obligors. They sold the property subject to this mortgage and later took a second mortgage from the purchasers. As mortgagors in the first mortgage plaintiffs instituted proceedings under the Act of April 28, 1903, P. L. 327, 21 PS §§735-738, to compel its assignment to them. Defendants resisted the assignment on the ground that if it were granted the Act of 1927 would then permit

---

[1] For an example of a similar application of Equity Rule 91 see Albert M. Greenfield & Co. v. Asset-Interest B. & L. Assn., 14 D. & C. 567 (1931).

the present owners of the land to compel a reassignment of the mortgage to their nominee (who might well be the present holder of the mortgage) hence, there would be unnecessary circuity of action. The court rejected this argument, stating:

"Such an event could not result, however, and the objection is without force. The Act of 1927 specifically provides that the owner of property encumbered by a mortgage may not compel an assignment, and no decree to that effect shall be entered, unless 'all parties holding any interest in the lands so encumbered have joined in the application for the assignment . . .' *Hence unless . . . [plaintiffs], holding a second mortgage, should assent, a reassignment of the first mortgage alone could not be required . . .*": Ibid. (Italics supplied.)

Since it does not appear to us that the second mortgagee joined in the application for assignment of the first mortgage in the case before us, no decree compelling such assignment alone can be entered, and plaintiff's rule for such relief is discharged.

The court may, nevertheless, decree a simultaneous assignment of both mortgages. True, the Act of 1927 refers to compulsory transfer of "*a* mortgage, judgment, recognizance or other security", using each term in the singular, but the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 32, 46 PS §532, provides that, in construing acts of assembly, "The singular shall include the plural, and the plural, the singular", hence, in the absence of any other objection to the present proceedings, the mere fact that defendant holds two mortgages would not preclude a decree for the transfer of both. Then, having held that the assignment of both mortgages may be decreed in one proceeding where they are held by the same person, we are impelled by obvious logic to decide that the holder of these encumbrances need not join in the application for their assignment: see Green et al. v. Second Allegheny

Building Assn. et al., supra. Consequently, the failure of defendant, as second mortgagee, to join in the application for assignment, though fatal to proceedings for transfer of the first mortgage alone, presents no obstacle to compulsory assignment of both. Such a distinction has not been foreclosed by any previous decision under this statute, and in fact it appears to have been contemplated by the Supreme Court when it stated in Kiedaisch et ux. v. Elkins Park National Bank et al., supra, pp. 250, 251, that unless the person holding both mortgages should assent "a reassignment of the first mortgage *alone* could not be required." (Italics supplied.) It remains, then, only to determine whether plaintiff has fulfilled the other conditions precedent to obtaining the relief he seeks.

The Act of 1927 provides: "That it shall be lawful for any person . . . holding lands encumbered by a mortgage, . . . after the same shall become due and payable, . . . to tender to the owner or owners of such mortgage . . . the full sum of money due thereon, including interest and any other charges due, and, upon such tender, to require the owner or owners to assign and transfer to such person or persons as the owner of the encumbered property may name, such mortgage . . ."

Concerning the first mortgage, it is conceded that the obligation was due and payable, and the full sum of money due thereon had been tendered. Concerning the second mortgage, however, there is dispute not only with respect to the maturity of the obligation, but also with respect to the amount due thereon at the time of the tender. . . .

[The court then proceeded to discuss the evidence relating to an alleged extension of the maturity date of the second mortgage and the amount due thereon, and after weighing the testimony reached the conclusion that the mortgage was overdue and that the correct amount of the obligation was $1,154.99.]

The next question to be decided is the validity of the tender with respect to the second mortgage. The sum actually tendered to defendant by plaintiff was $1,-234.44. This, according to plaintiff's calculations, represented principal, in the amount of $1,154.29; interest thereon at six percent from March 26, 1940, to May 20, 1941; and 50 cents to defray the cost of an acknowledgment for the requested assignment. We have indicated already that use of the figure $1,154.29 for the principal resulted from plaintiff's reliance upon the statement of the building and loan association in its answer to the interrogatories in the attachment proceedings, and that the secretary of the association, in his testimony before this court, declared that figure to be incorrect—being 70 cents short of the balance actually due. Strictly considered, therefore, plaintiff's tender was not "the full sum of money due" as required by the statute. There are courts which have held:

"Ordinarily, it is immaterial that the party making the tender did not know the correct amount or believed that the amount tendered by him was sufficient. He acts at his peril, and must see to it that the amount tendered is large enough. Any mistake in this respect is his own misfortune": Annotation, 5 A. L. R. 1226, 1232 (1920).

Pennsylvania cases are also cited there, p. 1226, for the proposition that "As a general rule, a tender must include everything to which the creditor is entitled, and a tender of any less sum is nugatory and ineffective as a tender": see M'Dowell v. Glass, 4 Watts 389 (1835); McKibbin v. Peters, 185 Pa. 518 (1898); Pershing v. Feinberg, 203 Pa. 144 (1902). However, defendant's refusal of the tender in this case was not based on the insufficiency of the amount offered. It is not disputed that the sum due on the first mortgage was correctly computed and tendered, yet it was refused. Similarly, though the amount tendered for payment of the second

mortgage was inadvertently 70 cents short, its refusal was not predicated upon the insufficiency thereof. In fact, at the hearing, when plaintiff sought to establish the exact amount purportedly due on the second mortgage according to the books of the building and loan association—whether $1,154.29 or $1,154.99—defendant's attorney stated:

"What is the difference? Why waste time talking about that?" (N. T., p. 31.)

On the other hand, defendant has objected persistently to plaintiff's proceeding in this matter on the ground that his motive is to harass and annoy the tenant presently occupying the premises. Defendant's willingness to receive payment for both mortgages is evidenced by the assertion, at the hearing, that "we will take the money now for the second and first mortgages and . . . we will go downstairs and satisfy them. We will do it today." Consequently, the objection to the *amount* of money tendered appears to be merely an afterthought on defendant's part, and our courts have held that under such circumstances defendant is not entitled, at an advanced stage of the proceedings, to raise that issue.

Thus it is stated in Fitzpatrick v. Engard et al., 175 Pa. 393, 398, 399 (1896), that: "Objection is now attempted to be made that the tender was not in legal tender notes or the amount accurately fixed. . . . But it is well settled law that where a tender is necessary and an objection is made to it, the party refusing to receive the tender will not be permitted to make any other objection than that made at the time, for the reason that the objection might have been avoided. . . . *A general refusal is a waiver of what may be considered the details of a tender:* Tiernan v. Roland, 15 Pa. 429". (Italics supplied.) To the same effect, see Suppon v. Russell, 38 Pa. C. C. 545, 548 (1911), where the court said:

"True, the amount tendered was $67, while, as we

compute the interest, it should have been $70.85. But as no objection was made to the amount or character of the money offered, but its refusal put upon a different ground, and as the tender seems to have been made in entire good faith, such objection will be deemed to have been waived. Brewer v. Fleming, 51 Pa. 102, 107; 28 Am. & Eng. Encyc. Law. 18." See also Leafgreen v. Labar et al., 280 Pa. 215, 222, 223 (1924). Where the difference between the amount tendered and the amount due is small, the court is not without authority to disregard it: see Milligan v. Marshall, 38 Pa. Superior Ct. 60, 64 (1909):

"If [the tender was refused] for the reason that the one cent or one and one-quarter cents was withheld, it may well be held to be not a sufficient reason, being too insignificant to be considered." A case closely resembling the one now before the court as to the matter of tender is Wymbs v. Reilly, 7 Lack. Leg. News 98 (1900), decided under the Act of June 24, 1885, P. L. 157, 21 PS §731, which provides for compulsory assignment of mortgages under certain enumerated circumstances. There, plaintiff had failed to tender the full amount due because of reliance upon an incorrect statement of costs incurred. The court recognized that "according to the strict letter of the law" there must be a tender of the full sum due, yet it proceeded to grant plaintiff's relief, making its order conditional upon payment by plaintiff of the correct amount. Application of this procedure in the instant case will assure defendant's receipt of all sums to which he is entitled, and provision therefor will be made in the decree entered this day.

Finally, a word concerning the possible motive behind plaintiff's prosecution of this action. Defendant insists that it is merely to harass and annoy the tenant now on the premises. We dismiss that objection now, as we did at the hearing, by stating that if the law gives plaintiff the right to a transfer of the mortgages (and

we have held that it does), he is entitled to a decree compelling that transfer; and if the law gives him the right, thereafter, to wipe out the lease, he is entitled to that too, without affecting the duty of the court, in the first instance, to decree unto him the assignment authorized by our statutes.

*Conclusions of law*

The chancellor draws the following conclusions of law:

1. Under the Act of May 4, 1927, P. L. 710, 21 PS §§733, 734, plaintiff is not entitled to a decree compelling assignment of the first mortgage alone, without joinder of the second mortgagee in the application therefor.

2. The first and second mortgages being held by the same person, plaintiff is entitled, upon tender of the full sum of money due thereon, to an assignment to himself or his nominee, of both mortgages, with the bonds and warrants for which each is given as security, despite nonjoinder of the second mortgagee, as such, or tenant in the application therefor.

3. The sum of $2,198.50, tendered to defendant on May 19, 1941, was a proper, full, and complete tender, and under the provisions of the act referred to above the running of interest on the first mortgage ceased as of that date until execution and delivery of the assignment.

4. On May 19, 1941, defendant was entitled to the sum of $1,235.19 as full payment of the second mortgage, but the sum of $1,234.44, tendered to defendant on that date as full payment, was a substantially full and complete tender under all the circumstances, and being uncontested as to amount at that time was sufficient to comply with the statute, causing interest on the second mortgage to cease as of that date until execution and delivery of the assignment.

5. Against the balance due on the second mortgage, plaintiff is entitled to a credit of $232.75, representing

rentals collected by defendant since June 1, 1941, as mortgagee in possession of the premises.

6. Plaintiff is therefore entitled to have assigned to him or his nominee both mortgages, including the bonds and warrants for which each was given as security, upon payment to defendant of the total sum of $3,200.94—representing $2,198.50 for the first mortgage and $1,002.44 for the second.

### Decree nisi

And now, to wit, January 21, 1942, it is ordered, adjudged, and decreed as follows:

1. That plaintiff's rule for decree pro confesso compelling assignment of the first mortgage is discharged.

2. That, upon payment by plaintiff of the total sum of $3,200.94, defendant, Ira Baeringer, shall forthwith assign to Martin L. Schaeffer, or his nominee, the first and second mortgages held by defendant on the premises 2824-26 West Dauphin Street, in the City of Philadelphia.

3. That the costs of these proceedings shall be paid by defendant.

The prothonotary is directed to enter this decree nisi, and to give notice thereof to the parties or their counsel, and unless exceptions thereto are filed within 10 days thereafter either party may present a form of final decree to be entered in the case.